193 P.3d 368

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Kevin POND, Petitioner/Defendant–Appellant.**

**No. 27847.**

Supreme Court of Hawai'i.

Sept. 29, 2008.

Deborah L. Kim and Theresa Marshall, Deputy Public Defenders, for petitioner/defendant-appellant Kevin Pond.

Richard Minatoya and Brandon L.K. Paredes, Deputy Prosecuting Attorneys, for respondent/plaintiff-appellee State of Hawai'i.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ., ACOBA and DUFFY, JJ., concurring and dissenting.

Opinion of the Court by NAKAYAMA, J.

Petitioner/Defendant–Appellant Kevin Pond ("Pond") seeks review of the Intermediate Court of Appeals' ("ICA's") October 30, 2007 judgment on appeal, issued pursuant to its October 11, 2007 opinion,[1] *see State v. Pond*, 117 Hawai'i 336, 181 P.3d 415 (App. 2007), affirming the second circuit family court's[2] ("circuit court") March 2, 2006 judgment convicting him of the offense of abuse of family or household member, in violation of Hawai'i Revised Statutes ("HRS") § 709–906 (1993 & Supp.2004)[3] and interference

---

1. The published opinion was authored by Associate Judge Corinne K.A. Watanabe and joined by Associate Judges Daniel R. Foley and Alexa D.M. Fujise.

2. The Honorable Richard T. Bissen presided.

3. HRS § 709–906, entitled "Abuse of family or household members; penalty," states:

(1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.

For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

(2) Any police officer, with or without a warrant, may arrest a person if the officer has reasonable grounds to believe that the person is physically abusing, or has physically abused, a family or household member and that the person arrested is guilty thereof.
. . . .

(5) Abuse of a family or household member and refusal to comply with the lawful order of a police officer under subsection (4) are misde-

with reporting an emergency or crime ("Interference offense") in violation of HRS § 710–1010.5 (1993 & Supp.2004).[4] We accepted Pond's application for a writ of certiorari, and oral argument was held on June 5, 2008.

Pond asserts that the ICA gravely erred by concluding that the Hawai'i Rules of Evidence ("HRE") Rule 404(b)[5] notice requirement was a "condition precedent" to (a) admitting "critical evidence of the complainant's prior attack offered to establish [Pond's] justification of self defense and to establish the complainant as the 'first aggressor,'" and (b) cross examining the complainant about her marijuana use on the night of the incident, because it violated Pond's constitutional rights to present a defense and confront adverse witnesses. Pond also asserts that the ICA gravely erred by affirming the conviction where "(a) the self-defense jury instructions were incomplete and misleading and (b) the instructions defining the Interference offense failed to specify that the state of mind requirement applied to each of these elements."

Because the circuit court precluded Pond from cross-examining the complaining witness about whether she used marijuana on December 12, 2005 to show that her perception was inaccurate, it committed reversible error. Accordingly, we vacate Pond's conviction of abuse of family or household member

and Interference offense, and remand for a new trial consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

The complaining witness, Miae Russell ("Ms. Russell"), met Pond in the summer of 2005, began dating him, and moved into Pond's house in October 2005. *Pond*, 117 Hawai'i at 339, 181 P.3d at 418. Ms. Russell and Pond presented conflicting testimony regarding an incident that occurred on December 12, 2005.

### 1. *Ms. Russell's account of December 12, 2005*

The ICA's published opinion set forth Ms. Russell's account that Pond physically abused her on December 12, 2005, as follows:

On the evening of December 12, 2005, [Ms. Russell] was alone in Pond's residence. At about 5:30 p.m., she had spoken by telephone with Pond, who was then at the Outback Steakhouse.

When Pond arrived home at around 10:30 p.m., she was already asleep. She woke up when she heard noises from the sliding glass door in the living room, which she had locked. [Ms. Russell] testified that she got up and walked to the living room to see who was outside and Pond "walked in through the bedroom screen door." She then got back in bed and Pond

---

meanors and the person shall be sentenced as follows:
 (a) For the first offense the person shall serve a minimum jail sentence of forty-eight hours; and
 (b) For a second offense that occurs within one year of the first conviction, the person shall be termed a "repeat offender" and serve a minimum jail sentence of thirty days.

4. HRS § 710–1010.5, entitled "Interference with reporting an emergency or crime," provided as follows:
 (1) A person commits the offense of interference with reporting an emergency or crime if the person intentionally or knowingly prevents a victim or witness to a criminal act from calling a 911–emergency telephone system, obtaining medical assistance, or making a report to a law enforcement officer.
 (2) Interference with the reporting of an emergency or crime is a petty misdemeanor.

5. HRE Rule 404(b) provides:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to prove the character of a person in order to show conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

"was jumping on [her] and climbing on [her], and was kind of like-he was drunk." [Ms. Russell] testified that she knew Pond was drunk because "[h]e smelled really bad" and "when [she] spoke to him at five-thirty he also told [her] he was drinking."

[Ms. Russell] testified that after she told Pond to get off her, he responded by jumping on her more. Pond "was piling the blankets on top of [her], and [she] was trying to kick them off. And then [Pond] went into the bathroom, and [Ms. Russell] was trying to fix the blankets." [Ms. Russell] then "asked [Pond] what that smell was." In response, Pond "came walking towards [her] and then he slammed [her] face into the bed" with one arm and "had his knee or something behind ... [her] arm," so that her arm and face were in a "weird position" and she "was just buried into the bed and [she] couldn't move." [Ms. Russell] testified that she "hurt a lot," "could not breathe[,]" and thought her jaw and arm were going to break. She also explained that while Pond was holding her down, he told her that "the reason why [she] was being punished was because [she] didn't know how to be obedient. And that's the last thing that he wanted to do, was to hurt [her], but that [she] needed to learn how to respect him." [Ms. Russell] related that "[e]ventually, [Pond] let go[,]" and after he got off of her, he was "just ranting." She was crying, still on her knees on her bed, and "screaming for help."

Pond approached her again, "grabbed the back of [her] head[,]" told her "to shut up, and he bit down on [Ms. Russell's] mouth and ... punctured the bottom part of [Ms. Russell's] mouth" so hard that it "went all the way through. And the other side, it was just very swollen and hard .... and there was blood." She received a scar from Pond's bite.

*Pond,* 117 Hawai'i at 339, 181 P.3d at 418. Ms. Russell then explained that she tried to call the police, but Pond fought her for her phone:

[Ms. Russell] was then asked how she got loose after Pond bit her. She responded, "I think he just let go, and I got up and

I was reaching for my purse and phone, and I tried to call the police." Thereafter, [Ms. Russell] testified as follows: [Pond] came over and grabbed the phone from me and knocked it out of my hand, because we were fighting for it, and everything got knocked on to the floor, the phone came apart, the battery came out. And by that time I was on my hands and knees on the floor and trying to pick everything up. And I—my stuff was right to the left of me, and I was also grabbing my things so that I could just get my things and leave.

According to [Ms. Russell], she told Pond she was calling the police and dialed 911 on her phone. She wasn't sure if she pushed the enter button, "but [she] think[s she] did, because when [she] went to the police station, [she] looked at the phone [and] it was on there." She further testified that as she was gathering her things and crying, Pond "said that he would help [her] carry it out or something. He was telling [her] to be quiet and shut up the whole time." Pond then "took [her] arm and put it behind her, and shoved [her] face into the closet door, and sort of pushed [her] along the door[,]" causing her face and mouth to bleed.

[Ms. Russell] expressed that she felt scared and she hurt "[e]verywhere." She also had bruises, welts, cuts, and fingernail marks, some of which lasted "at least a week" and "were still visible like ten days later." Her "hair was [also] falling out." [Ms. Russell] related that she then gathered some of her things, left the apartment, and drove to the Maui police station in Lāhainā.

.... [Ms. Russell] also related that after the incident, she discontinued living with Pond and stopped dating him.

.... [Ms. Russell] testified that she informed Maui Police Department (MPD) Officer Jonathan Kaneshiro (Officer Kaneshiro) that she had told Pond she was calling 911. .... [When Ms. Russell] was then presented with the statement written by Officer Kaneshiro to "refresh [her] memory[,]" [t]he statement did not mention [her] claim that she had told Pond she was calling 911.

*Id.* at 339–40, 181 P.3d at 418–19. Ms. Russell denied that she was drinking on December 12, 2005. Ms. Russell also denied biting Pond but admitted that she "strike[d] him in self-defense" when Pond "was climbing all over [her], when he came to the bed."

### 2. *Pond's testimony*

Pond testified that on December 12, 2005, after running some errands, he had dinner with a female friend at Outback Steakhouse. He arrived home between ten to ten-thirty p.m., and he entered through the bedroom door because his normal office room entrance was locked. He saw Ms. Russell in the office room, smelled marijuana, and observed a half full bottle of vodka. He assumed that Ms. Russell bought the alcohol earlier that day and drank half the bottle because they do not normally keep alcohol in the house and she was the only person home.

Pond testified that when he walked into the office, he and Ms. Russell smirked at each other, "kissed for a few seconds," and then Ms. Russell bit on his upper left lip, which resulted in a permanent scar. In response, Pond "bit down on her to release-to have her release."

Pond testified that Ms. Russell attacked him, and he defended himself:

A. At that point, [Ms. Russell] backed up, she said, "Where the F" have you been? Who have you been with?" And at that point, on the second phrase that she said that, she punched me in the face.

Q. And what do you mean punch you in the face? Where is this?

A. Well, the first punch was on my left side—the first punch, as she was punching me, she says, "Where were you?" And then I said, I told her, "You know that I was out," and it was none of her business at this point. She punched me and continued, you know, raising her voice, starting to scream, "Where the F" have you been?" Punched me again. And I told her, "Stop it, you can't punch me, you're—I don't think because you're a woman you can sit here and beat me because I'm bigger than you—you can beat me."

Q. Were you trying to—

A. Not at that point, I verbally told her to stop at that point. She did it again, and then—as she started to do it, I started to defend, and try to protect myself from those punches.

Q. Can you demonstrate for the jury how you're defending yourself?

A. Well, she's swinging and I'm trying to block and throwing her arms off like this for the first few. She kept swinging and she kept swinging, and I kept trying to block them. And I blocked a lot of them and a lot of them. I blocked myself. I mean they were just coming—she was frantic and hysterical.

So at that point, I grabbed her—tried to grab and take her arm so she couldn't continue swinging at me and hitting me in the face.

. . . .

A. . . . I pushed her back, and she came back towards me again. And then at that point, I took her and I pushed her back even further.

. . . .

A. . . . And as I pushed her, she went falling into, you know, into the corner of the bed.

. . . .

A. She fell backwards. I pushed her off of me, she was facing me, and she went backwards with her back into the bed.

According to Pond, after [Ms. Russell] hit the bed, she sat on the bed, sobbed for a few seconds, "jumped back up," ran around the office room and threw a candle. Thereafter, when Ms. Russell was making a phone call, he took the phone and "dropped it on the bed":

[S]he picked up her telephone, and was making a phone call. I didn't know what the phone call was. We had argued before, and she had made a phone call, and it was to a friend to go over an stay with her friend.

And I took the phone, and I was—you know, we were rummaging to grab the phone. I took the phone and just dropped it on the bed. I said, "You know what, you just need to get all your stuff, and you

need to get out of here. Let's just get your things and let's just end this."

Pond testified that "as [Ms. Russell] was picking up and gathering herself, her stuff, she was kind of throwing her things around," and theorized that during this time, she may have thrown her phone and broken it.

Ms. Russell then went into the bathroom and started to cry. Pond joined her in the bathroom to try to clean her lip. *Id.* "And then at that point, it was just kind of—it was obvious that she wanted to leave." Pond testified that he did not prevent her from leaving and that Ms. Russell did not tell him that she was going to the hospital or the police.

### 3. *Other accounts produced at trial*

Officer Jonathan Kaneshiro ("Officer Kaneshiro") testified that he was working in the Lāhainā district on the night of December 12, 2005 at approximately 11:30 p.m. when Ms. Russell arrived at the police station. Ms. Russell had a difficult time relating to him what had occurred because she "was still crying and she would break down from time to time." [6] Officer Kaneshiro observed that Ms. Russell "had an injury to her mouth, [and] a little bruise around her ... right eye" and did not appear to be intoxicated. Officer Kaneshiro testified that he also noticed that "there was bruising on [Ms. Russell's] left arm, ... from her wrist to her elbow, and from her entire right arm from the wrist all the way to the shoulder[,]" and that she also sustained an injury to her lip that "wasn't dripping [blood] or anything, but it looked fresh."

After officers arrested Pond at his home, he was transported to the police station to be processed.

Officer Kaneshiro testified that he did not notice any injuries on Pond's body when the officers first arrived at Pond's residence.... Officer Kaneshiro acknowledged that it was possible that Pond could have bitten his tongue or lips when he was

on the ground lying face down. Officer Kaneshiro recalled that he had asked Pond at the police station whether Pond had any injuries and Pond responded that he had none. Pond also denied "having any kind of physical altercation with [Ms. Russell]" or that he "picked up [Ms. Russell's] phone and threw it."

*Pond,* 117 Hawai'i at 341, 181 P.3d at 420.

Quetzal Chacon, Pond's brother, testified that he picked Pond up on the street on December 13, 2005, and that he took a picture of Pond's lip because Pond told him that he wanted evidence that Ms. Russell bit him. He further stated that the picture admitted into evidence fairly and accurately depicted Pond's lip on December 13, 2005.

### B. Procedural History

#### 1. *Pond's motion for HRE Rule 404(b) evidence and continuance denied*

On February 27, 2006, minutes before Pond's jury trial was scheduled to begin, Pond orally moved for a continuance of trial in order to submit HRE Rule 404(b) evidence that Ms. Russell previously assaulted Pond. Pond's counsel explained that he only pinpointed the date of the alleged attack that morning and could not have earlier filed a notice of intent to introduce such evidence. He also argued that the evidence "goes to the heart of our self-defense."

The prosecution argued that defense counsel had the opportunity to present his defense "weeks ago" and that "he's supposed to provide discovery way before trial and not ask for continuance." Although the circuit court acknowledged that HRE Rule 404(b) allows notice of the intent to introduce evidence of bad acts to be given during trial, it ruled against Pond's motion for a continuance and observed, "I got more than sixty jurors outside. This is the only trial left." The circuit court also denied the HRE Rule 404(b) motion "for failure to provide notice," opining that "[i]f [the evidence] goes to the

---

**6.** When Officer Kaneshiro asked Ms. Russell to explain what happened, she stated that after Pond came home, "[they] got into a verbal argument; he began pushing her, and ... at one point pushed her against the wall. She stated that he hit her in the head, and threw her cell [phone] against the wall while she was trying to call 911. And he bit her in the lip or on the mouth, something like that."

heart of the defense, then it should have been something given more prominence earlier. I can't believe that it's that much to the heart of it based on the way it's dribbling in. I think that's how your client felt." The case immediately proceeded to trial.

During direct examination, Pond described an argument he had with Ms. Russell "a couple weeks prior" to December 12, 2005. Pond explained that when he came home from work, he saw Ms. Russell lounging on his bed with her dog, even though he had previously told her that he was allergic to pets and that she could not bring any animals into his house. Pond testified as to the final outcome of the argument:

I asked her to take the dog off the bed and she just continued to try and argue with me about the dog. So I walked over to pick up the dog and take it off the bed, and as I walked over to move it, the dog ran and jumped off and went over—went to another part of the house. And she came over to me and started swearing at me because, you know, of my stance on it, and you know, *proceeded to smack me.*

(Emphasis added.) The prosecution objected and the court reminded Pond's counsel of its HRE Rule 404(b) ruling and ordered the jury to disregard Pond's last response.

2. *Evidence that Ms. Russell was smoking marijuana on December 12, 2005*

During Ms. Russell's cross-examination, defense counsel asked whether she was smoking marijuana when Pond came home on December 12, 2005. The prosecution objected and the parties approached the bench. Pond's counsel argued that this evidence is "impeachable" and "goes to her credibility." However, the court ruled "[i]t's a prior bad act" because the question asks whether "she committed a crime that evening before he came home," and thus, required that Pond's counsel give the prosecution HRE Rule 404(b) reasonable notice. The court thereafter struck the last question and ordered the jury to disregard it.

3. *Jury instructions*

After the close of evidence, the circuit court instructed the jury, *inter alia,* as to

when a person acts with intentional (instruction 18), knowing (instruction 19), and reckless (instruction 20) states of mind. Then, it instructed the jury regarding the Interference offense:

Instruction 21. In Count II of the complaint, the Defendant, Kevin Pond, is charged with the offense of interference with reporting an emergency or crime. A person commits the offense of interference with reporting [sic] of an emergency or crime if that person intentionally or knowingly prevents a victim or witness to a criminal act from calling a 911–emergency telephone system, obtaining medical assistance, or making a report to a law enforcement officer. There are two material elements of the offense of interference with reporting an emergency or crime, each of which the [p]rosecution must prove beyond a reasonable doubt.

These elements, these two elements are that on or about December 12, 2005 in the County of Maui, State of Hawai'i, the Defendant, Kevin Pond intentionally or knowingly engaged in conduct; and that said conduct resulted in preventing a victim or witness to a criminal act from calling a 911–emergency telephone system, obtaining medical assistance, or making a report to a law enforcement officer. The intentional or knowingly [sic] state of mind applies to each element of the offense.

The circuit court also provided the following self-defense jury instruction:

The use of force upon or towards another person is justified when a person reasonably believes that such force is immediately necessary to protect himself on the present occasion against the use of unlawful force by the other person. A person employing protective force may estimate the necessity thereof *under the circumstances as he reasonably believes them to be* when the force is used without retreating. If, and only if, you find that the [d]efendant was reckless in having a belief that he was justified in using self-protective force against another person, or that the [d]efendant was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justifiability of his use of

force against the other person, then the use of such protective force is unavailable as a defense to the offense of abuse of family or household member.

### 4. *Pond appealed his conviction*

On March 1, 2006, the jury found Pond guilty of his charged offenses, and the circuit court filed a judgment convicting Pond on March 2, 2006. Pond filed a notice of appeal on March 28, 2006.

On October 11, 2007, the ICA affirmed the circuit court's judgment in a published opinion and filed a judgment on appeal on October 30, 2007. The ICA held that the circuit court did not abuse its discretion by precluding evidence that Ms. Russell allegedly struck Pond on a prior occasion and that Ms. Russell had smoked marijuana on December 12, 2005 because "the notice requirement is a condition precedent to the admissibility of HRE Rule 404(b) evidence." *Pond*, 117 Hawai'i at 350, 181 P.3d at 429. It also concluded that the circuit court's jury instruction about the self-protection defense is consistent with the language of the statute regarding the self-protection defense. *Id.* at 351, 181 P.3d at 429. Finally, it observed that the jury instructions erroneously combined two elements of the Interference offense, but that the error was harmless. *Id.*

## II. STANDARDS OF REVIEW

### A. Certiorari

This court considers whether the ICA's decision reflects "(1) [g]rave errors of law or of fact[ ] or (2) [o]bvious inconsistencies ... with [decisions] of th[is] court, federal decisions, or [the ICA's] own decision[s]" and whether "the magnitude of those errors or inconsistencies dictat[es] the need for further appeal." HRS § 602–59 (Supp.2007).

### B. Admissibility of Bad Act Evidence

■■ The admissibility of evidence requires different standards of review depending on the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. [T]he

traditional abuse of discretion, standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*State v. St. Clair*, 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003) (citing *State v. Pulse*, 83 Hawai'i 229, 246–47, 925 P.2d 797, 814–15 (1996)).

■ Under HRE Rule 404(b), the proponent of "bad act" evidence "shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial." HRE Rule 404(b). Because the trial court's determination of reasonable notice involves making a "judgment call," the admission of this evidence is reviewed for abuse of discretion. *See State v. Richie*, 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998).

■ An abuse of discretion occurs when the court "clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant." *St. Clair*, 101 Hawai'i at 286, 67 P.3d at 785 (citing *State v. Furutani*, 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994)).

### C. Cross–Examination

■ Violation of the constitutional right to confront adverse witnesses is subject to the harmless beyond a reasonable doubt standard. In applying the harmless beyond a reasonable doubt standard the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction.

*State v. Balisbisana*, 83 Hawai'i 109, 113–14, 924 P.2d 1215, 1219–20 (1996) (citations and internal quotation marks omitted).

### D. Jury Instructions

■ When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Errone-

ous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. [However, e]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

.... [O]nce instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, *i.e.*, that the erroneous jury instruction was not harmless beyond a reasonable doubt.

*State v. Nichols*, 111 Hawai'i 327, 335, 337, 141 P.3d 974, 982, 984 (2006).

## III. DISCUSSION

**A. The ICA Did Not Gravely Err By Concluding That (1) "The Notice Requirement Is A Condition Precedent To The Admissibility Of HRE Rule 404(b) Evidence" And (2) The Circuit Court Did Not Abuse Its Discretion By Precluding Pond's HRE Rule 404(b) Evidence That Ms. Russell Struck Him Two Weeks Prior To The Incident.**

Pond argues that the ICA gravely erred by concluding that under HRE Rule 404(b), he was required to give the prosecution reasonable notice prior to introducing HRE Rule 404(b) evidence because it violates his

constitutional right to present a defense and examine witnesses. Pond contends that the purpose of the notice requirement does not " 'trump' [his] constitutional rights, particularly where . . . there was no prejudice to the prosecution." Specifically, he asserts that he should have been permitted to introduce evidence that Ms. Russell attacked him two weeks prior to December 12, 2005. We disagree.

1. *HRE Rule 404(b)'s notice requirement is not unconstitutional.*

█ HRE Rule 404(b) was amended in 1994 to provide in pertinent part,

In criminal cases, the proponent [offering] evidence [of other crimes, wrongs, or acts] shall provide *reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown,* of the date, location, and general nature of any such evidence it intends to introduce at trial.

(Emphasis added.) Legislative history of HRE Rule 404(b) provides that the notice requirement "was modeled after a change recently made to the FRE." Hse. Stand. Comm. Rep. No. 567–94, in 1994 House Journal, at 1088.

The Advisory Committee Note to the 1991 Amendments to FRE Rule 404(b), the federal counterpart to HRE Rule 404(b), explains that the notice requirement "is intended to reduce surprise and promote early resolution on the issue of admissibility." [7] "Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is *inadmissible* if the court decides that the *notice requirement has not been met.*" FRE Rule 404(b) Advisory Committee's Note (emphases added).

As the ICA pointed out in *Pond*, HRE Rule 404(b)'s notice requirement differs from

---

7. The Advisory Committee Note to the 1991 Amendments to FRE Rule 404(b) further explains:

Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case.

. . . .

The amendment requires the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal. The court in its discretion may, under the facts, decide that the particular request or notice was not reasonable, either because of the lack of timeliness or completeness.

its federal counterpart in three ways. *Pond,* 117 Hawai'i at 348, 181 P.3d at 427. Pond claims that one distinction is critical to the instant case [8]—whereas FRE 404(b) requires the prosecution to provide notice, HRE Rule 404(b) also requires a *defendant* to give reasonable notice of its intent to use evidence of other crimes, wrongs, or acts. Pond contends that where the lack of pretrial notice did not prejudice the prosecution, "there is no basis for applying the requirement with equal force to defendants without considering the extent to which exclusion of evidence impinges on the rights to fair trial, to present a defense and of cross-examination."

 "The sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution guarantee a criminal defendant's right to confront adverse witnesses.... '[C]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.'" *State v. Sabog,* 108 Hawai'i 102, 107, 117 P.3d 834, 839 (App.2005) (quoting *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Because of the policy favoring cross-examination, "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" [9] *Michigan v. Lucas,* 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quoting *Rock v. Arkansas,* 483 U.S. 44, 55–56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (holding that a state rule excluding all posthypnosis testimony impermissibly infringes on a defendant's right to testify)); *see Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (holding that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice").

At the same time, the United States Supreme Court has ruled that "[t]he right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock,* 483 U.S. at 55, 107 S.Ct. 2704 (citation omitted); *see State v. Faria,* 100 Hawai'i 383, 391, 60 P.3d 333, 341 (2002) (noting that despite a defendant's constitutional right to confront a witness, "relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence'" (quoting HRE Rule 403 (2000))).

 Thus, "[i]n applying its evidentiary rules a [s]tate must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify." *Rock,* 483 U.S. at 56, 107 S.Ct. 2704; *see also State v. Nizam,* 7 Haw. App. 402, 411–12, 771 P.2d 899, 904–05 (1989) (holding that the defendant's constitutional right was not violated where the witness's testimony was stricken because the defendant refused to release his interviews upon which his expert witness based his opinion, and that there is a legitimate interest in "ensuring that a jury is provided with the relevant evidence on both sides of an issue in

---

8. HRE Rule 404(b) and the FRE Rule 404(b) also differ because HRE Rule 404(b) requires a more detailed form of notice ("date, location, and general nature of any such evidence") whereas FRE 404(b) merely requires "reasonable notice ... of the general nature of any such evidence." *Pond,* 117 Hawai'i at 348, 181 P.3d at 427. Further, HRE Rule 404(b), unlike FRE 404(b), does not require that the other party request that it give prior notice of the evidence. *Id.*

9. *Cf. Holmes v. South Carolina,* 547 U.S. 319, 328–31, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (ruling that precluding evidence of third-party guilt where the prosecution has introduced evidence that, if believed, strongly supports a guilty

verdict, is unconstitutional); *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (holding that excluding evidence of the circumstances of defendant's confession is unconstitutional); *Washington v. Texas,* 388 U.S. 14, 22–23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (holding that a state statute that prohibited the defendant from calling a witness who had been charged and previously convicted of committing the same murder is unconstitutional); *Chambers v. Mississippi,* 410 U.S. 284, 295–96, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (ruling that precluding the defendant from impeaching his own witness under the "voucher rule" deprived defendant of his confrontation right).

order to assist it in determining the truth and arriving at a just decision") *cert. denied,* 70 Haw. 666, 796 P.2d 502 (1989).

The Supreme Court applied the "legitimate interest" rule in *Lucas.* 500 U.S. at 146, 111 S.Ct. 1743. *Lucas* considered whether the trial court violated defendant Lucas' right to confrontation when it precluded his proffered evidence for failure to comply with the rape shield statute's notice requirements. *Id.* The rape shield statute, designed to protect victims of rape from being subjected to harassing or irrelevant questions concerning their past sexual behavior, permits a defendant to introduce evidence of his or her own past sexual conduct with the victim if the defendant files a written motion and an offer of proof within ten days after he is arraigned. *Id.* at 146–47, 111 S.Ct. 1743. The trial court may also hold "an in camera hearing to determine whether the proposed evidence is admissible." *Id.* Lucas was found guilty of criminal sexual conduct, and on appeal, the Michigan Court of Appeals reversed, holding that the statute's notice requirement is *per se* unconstitutional "even where a defendant's failure to comply with the notice-and-hearing requirement is a deliberate ploy to delay the trial, surprise the prosecution, or harass the victim." *Id.* at 149, 111 S.Ct. 1743. The Supreme Court granted certiorari. *Id.*

The Supreme Court recognized that the rape shield statute implicates the sixth amendment and that, "[t]o the extent that it operates to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished. *This does not necessarily render the statute unconstitutional.*" *Id.* at 149, 111 S.Ct. 1743 (internal quotation marks and brackets omitted and emphasis added). *Lucas* observed that the defendant's right to present relevant evidence "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* (quoting *Rock,* 483 U.S. at 55, 107 S.Ct. 2704).

Pursuant to this rule, the Supreme Court recognized the state's interest in the policy underlying the rape shield statute's procedural prerequisites—to protect rape victims from surprise, harassment, and invasions of privacy, and permit the prosecution to investigate the evidence. *Id.* at 149–50, 111 S.Ct. 1743. Next, the Court pointed to its previous rulings upholding evidentiary notice requirements *even where such requirements limited a defendant's right to confrontation. Id.* at 150–52, 111 S.Ct. 1743 (citing *Taylor v. Illinois,* 484 U.S. 400, 414, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (rejecting defendant's argument that "preclusion is *never* a permissible sanction for a discovery violation" and holding that the circuit court did not err by refusing to permit defendant's undisclosed witness to testify after violating a state procedural rule)); *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (affirming the trial court's refusal to permit defendant to call a witness where the defendant refused to comply with the District Court's order to submit a copy of the witness's report to the prosecution and declaring that "[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system"); *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) ("The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system .... [N]othing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals."). It further analogized the notice requirement to the notice of alibi rule that it upheld in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), as follows:

> The [Supreme] Court observed that the notice requirement 'by itself in no way affected [the defendant's] crucial decision to call alibi witnesses .... At most, the rule only compelled [the defendant] to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that [he] planned to divulge at trial.' [*Williams,* 399 U.S. at 85, 90 S.Ct. 1893.] Accelerating the disclosure of this evidence did not violate the Constitution, the [Supreme] Court explained, because a criminal trial is not 'a poker game in which players enjoy an absolute right always to

conceal their cards until played.' [*Id.* at 82, 90 S.Ct. 1893.]

*Id.* at 149, 111 S.Ct. 1743. Based on its prior rulings and the state's interest in the rape shield statute, *Lucas* ruled that precluding evidence based on the rape shield statute's notice requirement is not *per se* unconstitutional. *Id.* at 150, 152–53, 111 S.Ct. 1743. However, it remanded the case to determine whether the trial court abused its discretion by precluding Lucas' evidence. *Id.* at 152–53, 111 S.Ct. 1743.

In determining whether HRE Rule 404(b)'s notice requirement is also not *per se* unconstitutional, we next consider the policy governing the rule's notice requirement. As stated above, the *Lucas* court described sound reasons for requiring pre-trial notice. *See Lucas,* 500 U.S. at 150–52, 111 S.Ct. 1743; *cf. Wardius,* 412 U.S. at 473, 93 S.Ct. 2208 ("Notice-of-alibi rules ... are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial."). The notice requirement pertaining to HRE Rule 404(b) evidence is likewise designed to reduce surprise and promote early resolution of admissibility questions. *See Pond,* 117 Hawai'i at 350, 181 P.3d at 429; FRE Rule 404(b) Advisory Committee's Note.

Moreover, HRE Rule 404(b) is not unconstitutional merely because it *implicates* a defendant's constitutional right to confront witnesses and its federal counterpart does not. As the Advisory Committee's Note to FRE Rule 404(b) observed, the notice requirement is "in the mainstream with notice and disclosure provisions in other rules of evidence," such as FRE Rules 412 (written motion of intent to offer evidence under rule), 609 (written notice of intent to offer conviction older than 10 years), 803(24) and 804(b)(5) (notice of intent to rely on residual hearsay exceptions). Advisory Committee's Note to FRE Rule 404(b). These federal rules of evidence, by their plain language, apply equally to the prosecution and the defense. Like these rules and other Hawai'i rules of evidence,[10] HRE Rule 404(b) is not *per se* unconstitutional even though it may restrict a defendant's constitutional right to confront an adverse witness. "The Sixth Amendment is not so rigid" that the HRE Rule 404(b) notice requirement violates the sixth amendment in all cases where it is used to preclude HRE Rule 404(b) evidence. *See Lucas,* 500 U.S. at 151, 111 S.Ct. 1743. Accordingly, we conclude that HRE Rule 404(b)'s policy of "reduc[ing] surprise and promot[ing] early resolution on the issue of admissibility" "justify the limitation imposed on the defendant's constitutional right to testify."

The Dissent compares the HRE Rule 404(b) notice requirement to statutory privileges that "preclude the admission at trial of certain classes of confidential communications" and that may "interfere[ ] with a defendant's constitutional right to cross-examine." *State v. Peseti,* 101 Hawai'i 172, 181, 65 P.3d 119, 128 (2003); *see* Concurring and dissenting opinion ("Dissent") at 476, 193 P.3d at 392. The Dissent argues that the defendant's constitutional right to confrontation trumps HRE Rule 404(b) in certain circumstances in the same way that it prevails over statutory privileges "upon a sufficient showing by the defendant." *See* Dissent at 477, 193 P.3d at 393 (citing *Peseti,* 101 Hawai'i at 181–82, 65 P.3d at 128–29). The *Peseti* rule is not outcome dispositive of the instant issue, however, because HRE Rule 404(b) serves a different purpose than a statutory privilege and does not *per se* exclude evidence.

In *Peseti,* this court considered whether the statutory victim-counselor privilege violated defendant Peseti's constitutional right to confront adverse witnesses as guaranteed by the sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution. 101 Hawai'i at 174, 65

---

**10.** HRE Rule 412 requires a defendant accused of committing sexual assault intending to submit evidence of an alleged victim's past sexual behavior to submit written notice fifteen days prior to the introduction of evidence unless the court determines that the evidence or an issue is newly discovered, and HRE Rule 803(24) requires a notice of intent to admit hearsay evidence that has circumstantial guarantees of trustworthiness.

P.3d at 121. This court recognized the worthy goal of this statute: protecting victim-counselor communications assures victims that "their thoughts and feelings will remain confidential" and thereby promotes successful counseling. *Id.* at 180, 65 P.3d at 127. Yet, we also recognized that "[t]he scope of a statutory privilege ... is tempered by the principle that 'privileges preventing disclosure of relevant evidence are not favored and may often give way to a strong public interest.'" *Id.* (citation and internal quotation marks omitted). Citing to *Davis,* 415 U.S. at 319–20, 94 S.Ct. 1105, which held that a defendant's constitutional right to confront adverse witnesses trumps the confidentiality of a juvenile's record, and other courts' rulings that statutory privileges may give way to a defendants' constitutional right, we held that "when a *statutory privilege* interferes with a defendant's constitutional right to cross-examine, then, upon a sufficient showing by the defendant, the witness' statutory privilege must, in the interest of the truth-seeking process, bow to the defendant's constitutional rights." *Id.* at 181–82, 128–29, 65 P.3d 119 (emphasis added).

The Dissent contends that defendants should be permitted to bring forth HRE Rule 404(b) evidence if they satisfy the statutory privilege test laid out in *Peseti* because it "'operate[s] to preclude the admission at trial of certain' information,"[11] *see* Dissent at 477, 193 P.3d at 393, but the *Peseti* rule was not designed or intended to address evidentiary notice requirements. The adoption of this rule was based on the purposes of statutory privileges and, accordingly, only applies to "evidence of a statutorily privileged confidential communication." *Peseti,* 101 Hawai'i at 180–82, 65 P.3d at 127–29. Moreover, unlike a statutory privilege, HRE Rule 404(b) does not automatically render evidence inadmissible. Rather, HRE Rule 404(b) evidence may be admitted where the proponent provided reasonable notice or had

good cause for lack of pretrial notice. *See* HRE Rule 404(b) (requiring "reasonable notice in advance of trial, or during trial *if the court excuses pretrial notice on good cause shown*" (emphasis added)); *Pond,* 117 Hawai'i at 350, 181 P.3d at 429 (declaring that "the notice requirement is a condition precedent to the admissibility of HRE Rule 404(b) evidence").

Although the Dissent indicates that it is not claiming that a "rule that impinges on a defendant's constitutional right ... is unconstitutional *per se,*" *see* Dissent at 482, 193 P.3d at 398, applying the *Peseti* test to otherwise admissible HRE Rule 404(b) evidence invariably renders the rule's notice requirements unconstitutional as applied to criminal defendants. The application of the *Peseti* test to HRE Rule 404(b) would always allow defendants to present HRE Rule 404(b) evidence that did not comport with the HRE Rule 404(b) notice requirement. In other words, it appears that relevant HRE Rule 404(b) evidence would always satisfy the *Peseti* test and therefore, be rendered admissible. *See Peseti,* 101 Hawai'i at 182, 65 P.3d at 129 (requiring that "(1) there is a legitimate need to disclose the protected information[,] (2) the information is relevant and material to the issue before the court[,] and (3) the party seeking to pierce the privilege shows by a preponderance of the evidence that no less intrusive source for that information exists"). Therefore, to hold that the *Peseti* rule applies to the admission of defendants' HRE Rule 404(b) evidence, on the basis of protecting defendants' constitutional rights, would effectively rewrite HRE Rule 404(b) and render the notice requirement *per se* unconstitutional.

As explained above, HRE Rule 404(b), like many discovery rules, is designed to reduce surprise during the criminal trial and maintain fairness for both parties. Similar to the notice of alibi rule, the HRE Rule 404(b) notice requirement "[a]t most, ... only

---

11. *Peseti* declared that a defendant's constitutional right of confrontation trumps a statutory privilege

when the defendant demonstrates that: "(1) there is a legitimate need to disclose the protected information; (2) the information is relevant and material to the issue before the court;

and (3) the party seeking to pierce the privilege shows by a preponderance of the evidence that no less intrusive source for that information exists."

*Peseti,* 101 Hawai'i at 182, 65 P.3d at 129 (quoting *State v. L.J.P.,* 270 N.J.Super. 429, 637 A.2d 532, 537 (1994)).

compelled [the defendant] to accelerate at an earlier date information that [he] planned to divulge at trial.'" *Williams,* 399 U.S. at 85, 90 S.Ct. 1893. By precluding parties from introducing HRE Rule 404(b) evidence during trial and surprising the opposing party without good cause, this notice requirement protects parties and the jury trial system from falling prey to opposing counsel's trial tactics and strategies that do not promote a fair trial. *Cf. Williams,* 399 U.S. at 82, 90 S.Ct. 1893 ("The adversary system of trial ... is not a poker game in which players enjoy an absolute right to conceal their cards until played."). The HRE Rule 404(b) notice requirement comports with this court's interest in promoting the orderly administration of justice and does not interfere with the defendant's constitutional rights. *Cf. Baxter v. State,* 522 N.E.2d 362, 369 (Ind.1988) ("[N]otice rules promote the orderly administration of justice by preventing unnecessary continuances and by eliminating trials in those instances where post-notice investigation reveals an alibi's merits." (quoting *Alicea v. Gagnon,* 675 F.2d 913, 917 (7th Cir. 1982))).

Having concluded that HRE Rule 404(b) is not *per se* unconstitutional, we next consider whether the circuit court abused its discretion by excluding Pond's HRE Rule 404(b) evidence in the present case. *See Wood v. Alaska,* 957 F.2d 1544, 1550 (1992) ("Because trial judges have broad discretion both to determine relevance and to determine whether prejudicial effect or other concerns outweigh the probative value of the evidence, we will find a Sixth Amendment violation only if we conclude that the trial court abused its discretion." (Citations omitted.)).

2. *The circuit court did not abuse its discretion by precluding evidence that Ms. Russell previously "smacked" Pond under HRE Rule 404(b).*

As discussed above, Pond attempted to introduce "HRE Rule 404(b) evidence" on the first day of trial by arguing that it is "highly relevant to the issue of 'first aggressor,'" but the circuit court ruled that Pond gave unreasonable notice of this evidence. The circuit court excluded this HRE Rule 404(b) evidence, opining, "If it goes to the heart of the defense, then it should have been something given more prominence earlier. I can't believe that it's that much to the heart of it based on the way it's dribbling in."

As the Dissent points out, Pond's proffered evidence may implicate HRE Rule 404(a)(2). *See* Dissent at 477, 193 P.3d at 393 (citing HRE Rule 404(a)(2) (providing that victims' character traits offered by an accused may be admitted "to prov[e] action in conformity therewith on a particular occasion")). Based on its plain language, HRE Rule 404(a)(2) evidence is not subject to the reasonable notice provision of HRE Rule 404(b). Nevertheless, Pond identified the alleged attack of Pond by Ms. Russell as "404(b) evidence" in his opening brief's points of error section and argued that the court erred in excluding the HRE Rule 404(b) evidence. Thus, the issue of the admissibility of this evidence under *HRE Rule 404(a)* was not asserted by defendant and is therefore deemed waived. *See* Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."); HRAP Rule 28(b)(7) (providing that the opening brief must contain an argument section "containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.... Points not argued may be deemed waived").

The record indicates that the circuit court did not abuse its discretion by denying Pond's request to introduce Ms. Russell's prior acts under HRE Rule 404(b). On the first day of trial, defense counsel explained to the court that he was *previously aware* of the "[HRE Rule] 404(b) event," but did not give the prosecution notice because he "wasn't able to pinpoint the day until [that] morning." This argument was disingenuous at best. When Pond's counsel attempted to introduce the alleged HRE Rule 404(b) evidence at trial, both Pond and his counsel merely approximated the date of the event. On direct examination, the following colloquy took place between Pond and his counsel:

Q. The reason you're here today is because of the event that happened on late *December 12*, do you remember an incident that happened *about a week and a half prior?*

A. I do.

....

A. .... *[T]hat day, a couple weeks prior to what, the 12th,* she had—I had come home from work and she had the dog and it was laying up on my bed, and just lounging on the bed.

(Emphases added.) Pond's argument for excusing pretrial notice is inconsistent with his testimony, which clearly did not "pinpoint" the date of the prior incidents. Accordingly, Pond did not establish good cause for delaying the notification of the HRE Rule 404(b) evidence until the day of trial.

■ We further note that defense counsel could have given the prosecution general notice prior to trial to eliminate undue surprise and allow the prosecution the opportunity to prepare for this matter. *See Pond,* 117 Hawai'i at 350, 181 P.3d at 429 (observing that Pond never explained "why he could not have provided earlier notice of the approximate time period of the alleged bad act, as well as the location and the general nature of the evidence"). Accordingly, we conclude that the circuit court did not abuse its discretion by declining to excuse pretrial notice on good cause shown and precluding Pond's HRE Rule 404(b) evidence.

## B. The Circuit Court Committed Reversible Error By Precluding Pond From Cross–Examining Ms. Russell About Whether She Smoked Marijuana on December 12, 2005.

■ Pond next argues that the ICA gravely erred by concluding that he was required to provide reasonable notice of his intent to cross-examine Ms. Russell about using marijuana on December 12, 2005 to

attack her perception and recollection. It is well recognized that a defendant may cross-examine the witness "as to her drug use and addiction at or near the time of the incident to the extent that it affected her perception or recollection of the alleged event." [12] *Sabog,* 108 Hawai'i at 111, 117 P.3d at 843 (citing *Wilson v. United States,* 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728 (1914) (concluding that witness's drug use was admissible to discredit the witness's reliability); *Blumhagen v. State,* 11. P.3d 889 (Wyo.2000) ("A witness' [sic] use of drugs while she is testifying or during the events about which she is testifying may, of course, be presented to the jury because the drug use could have affected the witness' [sic] observations or statements.")). "Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but *the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.*" *Davis,* 415 U.S. at 316, 94 S.Ct. 1105 (emphasis added). As further discussed below, evidence introduced to impeach a witness's sensory or mental defect does not fall under the purview of HRE Rule 404(b).

■ The application of HRE Rule 404(b) is limited to other crimes, wrongs, or acts "[that] is probative of another fact that is of consequence to the determination of the action." HRE Rule 404(b). *United States v. Tomblin,* 46 F.3d 1369 (5th Cir.1995) is instructive on this point. In *Tomblin,* the 5th Circuit discussed whether the prosecution was required to give advance notice of its intent to impeach the defendant through cross-examining him about other acts. *Tomblin,* 46 F.3d at 1388. The prosecution contended that its cross-examination questions were probative of Tomblin's character for truthfulness and is admissible under FRE Rule 608(b) [13]—evidence offered to impeach a

---

12. In *Pond,* the ICA explained that FRE Rule 404(b) "does not extend to evidence of acts which are 'intrinsic to the charged offense.'" *Pond,* 117 Hawai'i at 348, 181 P.3d at 427 (quoting FRE Rule 404(b) Advisory Committee's Note). However, we have recently rejected the extrinsic/intrinsic evidence distinction because it

"essentially nulli[fies] Rule 404(b)'s restrictions on 'bad act' evidence." *State v. Fetelee,* 117 Hawai'i 53, 81, 175 P.3d 709, 737 (2008).

13. FRE 608(b) provides,

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the

witness. *Tomblin,* 46 F.3d at 1388. The 5th Circuit agreed that the admissibility of other acts evidence depends on the purpose for the proffered evidence and noted that FRE Rule 404(b) applies "when other-acts evidence is offered as relevant to an issue in the case, such as identity or intent." *Id. Tomblin* determined that the prosecution intended to question the defendant about his alleged prior acts to probe his character for truthfulness. *Id.* at 1389. Therefore, FRE Rule 608(b), not FRE Rule 404(b), applied, and "reasonable notice" of this evidence was not required. *Id.*

Here, contrary to the conclusion of the ICA and the ruling of the circuit court, Pond was not required to provide the prosecution HRE Rule 404(b) "reasonable notice" prior to cross-examining Ms. Russell about whether she used marijuana on December 12, 2005 because he intended to show the jury that her perception and testimony about the incident were not credible. *See United States v. Baskes,* 649 F.2d 471, 477 (7th Cir.1980) ("No rule or rationale guarantees the defense advance knowledge of legitimate impeachment before it calls a witness."), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1706, 68 L.Ed.2d 201 (1981). Hence, the ICA erred in affirming the circuit court's ruling that precluded Pond from cross-examining Ms. Russell about her alleged marijuana use on December 12, 2005 based on HRE Rule 404(b).

■ The circuit court committed reversible error in limiting the cross-examination of Ms. Russell as to her marijuana use.[14] Pond was deprived of showing that Ms. Russell's

perception of the events was altered through her alleged use of marijuana. Pond's testimony that he smelled marijuana upon entering the house was insufficient to prove that Ms. Russell's perception on December 12, 2005 was inaccurate. If the court permitted Pond's counsel to question Ms. Russell on this issue directly, the jury could have observed Ms. Russell's response and judged her credibility. *See Lyba v. State,* 321 Md. 564, 583 A.2d 1033 (1991) ("[T]he defense could follow up the admission [that the victim took narcotics on the day in question] by delving the degree of drug influence or alcohol intoxication so that the jury could decide the credibility of the victim and how much weight to give her testimony.").

In convicting Pond of the two offenses, the jury found Ms. Russell credible and believed Ms. Russell's testimony about December 12, 2005 over Pond's testimony. There was a reasonable possibility that the errors complained of contributed to Pond's conviction. Therefore, we conclude that the circuit court's error was not harmless beyond a reasonable doubt, and we vacate Pond's convictions.

## C. The ICA Did Not Gravely Err By Concluding That The Circuit Court Properly Instructed the Jury On Self–Defense Inasmuch As It Adequately Tracked the Self–Protection Defense Statute.

Next, Pond contends that the ICA gravely erred by concluding that the circuit court did

purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

14. As the Supreme Court explained in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986):

The harmless-error doctrine recognizes the principle that the central purpose of a criminal

trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Van Arsdall,* 475 U.S. at 681, 106 S.Ct. 1431. The Supreme Court deemed the following factors important in determining whether the constitutional error was harmless: the "importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 684, 106 S.Ct. 1431.

not err in instructing the jury about the self-protection defense even though it did not "define for the jury that the reasonableness of [Pond's] belief must be viewed from his perspective."

■ Under HRS § 703–304(3) (1993 & Supp.2006), the statute regarding the use of force in self-protection as a defense, "a person employing protective force may estimate the necessity thereof *under the circumstances as he believes them to be when the force is used* without retreating, surrendering, possession, doing any other act which he has no legal duty to do, or abstaining from any lawful action." (Emphasis added.) *See State v. Pemberton*, 71 Haw. 466, 477, 796 P.2d 80, 85 (1990) ("[T]he standard for judging the reasonableness of a defendant's belief for the need to use deadly force is determined from the point of view of a reasonable person in the defendant's position under the circumstances as he believed them to be. The jury, therefore, must consider the circumstances as the Defendant subjectively believed them to be at the time he tried to defend himself." (citation omitted)).

> The self-defense jury instruction provided: The use of force upon or towards another person is justified when a person reasonably believes that such force is immediately necessary to protect himself on the present occasion against the use of unlawful force by the other person. A person employing protective force may estimate the necessity thereof *under the circumstances as he reasonably believes them to be* when the force is used without retreating. If, and only if, you find that the [d]efendant was reckless in having a belief that he was justified in using self-protective force against another person, or that the [d]efendant was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justifiability of his use of force against the other person, then the use of such protective force is unavailable as a defense to the offense of abuse of family or household member.

This instruction sufficiently tracks HRS § 703–304(3) inasmuch as it informs the jury that the reasonableness of Pond's belief must be viewed from his perspective. Because the jury must consider whether the defendant's belief was reasonable "under the circumstances as he reasonably believes them to be," it necessarily evaluates the situation from the defendant's perspective. Therefore, the ICA properly determined that the circuit court's jury instruction was consistent with the language of the self-protection defense statute.

**D. We Clarify that There Are Two Attendant Circumstances: (1) Ms. Russell Was a Victim of a Crime and (2) The Call Was Made to 911–Emergency Telephone System.**

■ Finally, Pond argues that the ICA gravely erred by ruling that the circuit court erred by combining the elements of the Interference offense but ruling that this error was harmless. The ICA, in agreement with the prosecution and Pond, ruled that the jury's instructions as to the Interference offense consisted of two elements, results of conduct and attendant circumstances. *Pond*, 117 Hawai'i at 352, 181 P.3d at 431. We take this opportunity to clarify the ICA's analysis of the Interference offense's attendant circumstance element.

Under HRS §§ 702–204 and 702–205 (1993), "[A] person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense, (1) conduct, (2) attendant circumstances, and (3) results of conduct." In *State v. Aiwohi*, 109 Hawai'i 115, 123 P.3d 1210 (2005), this court observed that the Model Penal Code does not define an attendant circumstance, and we adopted the ICA's definition of an "attendant circumstance" as stated in *State v. Moser*, 107 Hawai'i 159, 172, 111 P.3d 54, 67 (App.2005): "[a]ny circumstances defined in an offense that are neither conduct nor the results of conduct would, by default, constitute attendant circumstances elements of the offense." *Aiwohi*, 109 Hawai'i at 127, 123 P.3d at 1222. In applying this definition of an attendant circumstance, we distilled the three elements of the offense of manslaughter ("recklessly causes the death of another person"). "The conduct is any voluntary act or omission, the result is

death, and the attendant circumstance is 'of another person.' " *Id.*

In the instant case, Pond is guilty of the Interference offense if he "intentionally or knowingly prevents a victim or witness to a criminal act from calling a 911–emergency telephone system, obtaining medical assistance, or making a report to a law enforcement officer." HRS § 709–906. Applying this court's definition of attendant circumstances, the conduct is any voluntary act or omission, the result is preventing Ms. Russell from making a telephone call, and the *attendant circumstances* are that (1) Ms. Russell was a victim of a crime and (2) the call was to 911–emergency. As previously quoted, and worth repeating here, the jury instruction on the Interference offense mistakenly stated in pertinent part that the intentional or knowing state of mind is required for *two* elements: (1) that Pond "engaged in conduct" and (2) "that said conduct resulted in preventing a victim or witness to a criminal act from calling a 911–emergency telephone system, obtaining medical assistance, or making a report to a law enforcement officer."

Thus, on remand, the elements of "results-of-conduct" (that Pond successfully prevented Ms. Russell from making a telephone call) and "attendant circumstances"—(1) that Ms. Russell was a victim of a criminal act and (2) that the call was made to 911—emergency telephone system-should be separately listed.

## IV. CONCLUSION

Based upon the foregoing analysis, we vacate Pond's conviction of abuse of family or household member and Interference, and remand for further proceedings consistent with this opinion.

Concurring and Dissenting Opinion by ACOBA, J.

I concur except, respectfully, I believe that the Intermediate Court of Appeals (ICA) did gravely err (1) in affirming the decision of the Second Circuit Family Court (the court)

to exclude, based on a purported violation of the notice provision in Hawai'i Rules of Evidence (HRE) Rule 404(b) (Supp.2007), evidence submitted by Petitioner/Defendant–Appellant Kevin Pond (Petitioner) that the Complainant herein (Complainant) struck him prior to the incident in question; (2) in affirming the court's decision to deny Petitioner's request for a continuance; and (3) in affirming the ruling of the court that the jury instruction on self-defense was proper. *State v. Pond,* 117 Hawai'i 336, 338, 181 P.3d 415, 417 (App.2007).

I.

First, while the majority herein overturns the ICA's holding excluding the Complainant's marijuana use, with all due respect I believe it incorrectly fails to treat the assault evidence proposed by Petitioner similarly.[1] In my view, both ICA holdings were in error and, thus, the ICA's affirmance of the court's exclusion of the prior assault evidence should be vacated.

A.

The ICA and the majority note that in consonance with parallel changes made in 1991 to the Federal Rules of Evidence (FRE), "reasonable notice" was added to HRE 404(b) by the legislature in 1994. *Id.* at 347, 181 P.3d at 426 (citing Sen. Stand. Comm. Rep. No. 2744, in 1994 Senate Journal, at 1092; Hse. Stand. Comm. Rep. No. 567–94, in 1994 House Journal, at 1088); majority opinion at 462–63, 193 P.3d at 378–79 (citing Hse. Stand. Comm. Rep. No. 567–94, in 1994 House Journal, at 1088). The notice requirement only applies to criminal cases and "does not require any particular form or set forth specific time limits for such notice." *Pond,* 117 Hawai'i at 346–47, 181 P.3d at 425–26 (footnote omitted) (distinguishing HRE Rule 404(b) from HRE Rule 412(c)(1) (Supp.2007), stating that for criminal cases, HRE Rule 412(c)(1) requires that in order

---

1. The ICA held that "[the court's] decision to preclude the *admission of evidence that [Complainant] allegedly struck [Petitioner] on a prior occasion* did not constitute an abuse of discretion[]" and that "no abuse of discretion occurred when the [court] precluded [Petitioner] from cross-examining [Complainant] about her alleged marijuana use[.]" 117 Hawai'i at 350, 181 P.3d at 429 (emphasis added).

for the accused to admit "evidence of specific instances of the alleged victim's past sexual behavior," a written motion to offer the evidence must be made "no later than fifteen days before" trial is scheduled to begin). Based on The Advisory Committee Note to the 1991 Amendments to FRE Rule 404(b) (1991 Advisory Committee Note), the ICA and the majority state that "reasonable notice" is a "pretrial notice" that "serves as a *condition precedent* to the admissibility of 404(b) evidence." *Id.* at 347, 181 P.3d at 426 (emphasis added); majority opinion at 462, 193 P.3d at 378 (citation omitted).

But the term "condition precedent" in the federal commentary is not contained in HRE 404(b), Rule 404 Commentary, or legislative history.[2] The ICA conceded that HRE Rule 404(b)[3] differs from FRE Rule 404(b) because, *inter alia,* in the former, the notice requirement applies to both parties, *while the federal rule applies only to the prosecution.* 117 Hawai'i at 349, 181 P.3d at 427. Nevertheless, the ICA applied federal case law and state case law that imposed notice requirements on the prosecution *only,* in order to argue that Hawaii's Rule 404(b) notice was a "condition precedent" for the defense. *Id.* at 350, 181 P.3d at 429. Similarly, in connection with HRE Rule 404(b), the majority maintains that "[t]he [court] did not abuse its discretion in precluding [Petitioner's] evidence" of a prior assault by Complainant. Majority opinion at 467, 193 P.3d at 383 (formatting altered).

Significantly, the majority references to differences between HRE Rule 404(b) and statutory privileges fail to mention that the notice requirement in FRE Rule 404(b) applies *only* to the prosecution. This patent difference makes the cases citing FRE Rule 404(b) and the commentary to FRE Rule 404(b) inapplicable to the instant case.

Stricter enforcement of the notice requirement under FRE Rule 404(b) is implicated inasmuch as a violation of the requirement may result in a violation of the defendant's constitutional rights. *See* discussion *infra.* Thus, the 1991 Advisory Committee Note to FRE Rule 404(b), cited in the majority opinion at 465, 193 P.3d at 381, and the mention in the Note to the notice requirement as a "condition precedent," binding on the prosecution only, are simply not germane where the notice requirement is imposed on a defendant as under HRE Rule 404(b).

Similarly, the majority's argument that FRE Rule 404(b) is " 'in the mainstream with notice and disclosure provisions in other rules of evidence,' such as FRE Rule[s] 412[,] ... 609[,] ... 803(24) and 804(b)(5)," majority opinion at 465, 193 P.3d at 381 (quoting 1991 Advisory Committee Note to FRE Rule 404(b)), is irrelevant. The majority argues that "[t]hese federal rules of evidence, by their plain language, apply equally to the prosecution and the defense," and, therefore, HRE Rule 404(b), which also applies to the prosecution and the defense, "is not *per se* unconstitutional[.]" Majority opinion at 465, 193 P.3d at 381.

First, as repeatedly noted, see *infra,* it is not argued in this opinion that an evidentiary rule applicable to *both* the prosecution and the defense is *per se* unconstitutional. Rather, it is contended, see *infra,* that rules precluding a defendant from introducing evidence relevant to his defense should not be applied automatically without balancing the enforcement of the rule against a resulting violation of the defendant's constitutional rights.

Second, with respect to the aforementioned evidence rules cited by the majority, the notice provisions in FRE and HRE Rule 412

---

2. The legislative history states that "[t]he notice provision parallels the change made in 1991 to the [FRE]." Sen. Stand. Comm. Rep. No. 2744, in 1994 Senate Journal, at 1092; *see also* Hse. Stand. Comm. Rep. No. 567–94, in 1994 House Journal, at 1088 (the modification was "modeled after a change recently made to the [FRE]"). This is not accurate, however, inasmuch as under HRE Rule 404(b), the notice provision applies to both parties and the FRE 404(b) notice provision applies to the prosecution only.

3. HRE 404(b) states, in relevant part: "In criminal cases, *the proponent of evidence* to be offered under the subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial." (Emphasis added.)

relating to the offer of evidence of a victim's past sexual behavior in a sexual misconduct case, in FRE Rule 609 [4] governing the offer of evidence of a prior conviction for witness impeachment purposes, in FRE and HRE Rule 803(24) pertaining to the offer of evidence not excluded by the rule against hearsay whether or not the declarant is unavailable, and in FRE Rule 804(b)(5) and its counterpart HRE 804(b)(8) governing the offer of evidence not excluded as hearsay where the declarant is unavailable, apply to *both* the prosecution and the defense. However, it is precisely because these rules impose the notice requirement on both parties that a valid analogy cannot be drawn between them and FRE Rule 404(b), which requires notice from the prosecution alone. Thus, whether FRE Rule 404(b) is "in the mainstream with notice and disclosure provisions in other rules of evidence" is of no import here. Hence, Petitioner argues, and I agree, that there is no basis for applying the precondition requirement with "equal force to [Petitioner] without considering the extent to which exclusion of evidence impinges on the rights to [a] fair trial and [to] present a defense."

### B.

To support its holding, the ICA cited *United States v. Long*, 814 F.Supp. 72 (D.Kan. 1993), *Pond*, 117 Hawai'i at 348, 181 P.3d at 427, and two foreign state cases, *Hatcher v. State*, 735 N.E.2d 1155 (Ind.2000), *id.* at 348–49, 181 P.3d at 427–28, and *Scott v. State*, 57 S.W.3d 476 (Tex.App.2001), *id.* at 349, 181 P.3d at 428. In these cases, the notice requirement applied only to the prosecution.

In citing *Long*, the ICA noted that the United States District Court of Kansas held that "[t]he court has the discretion to determine whether a particular notice is not reasonable due to incompleteness. The notice requirement is a *prerequisite* to admissibility of the Rule 404(b) evidence." *Id.* at 348, 181 P.3d at 427 (quoting *Long*, 814 F.Supp. at 73) (emphasis in original). But that case involved the FRE Rule 404(b) notice requirement which, as discussed *supra*, differs markedly from HRE Rule 404(b) in that the

federal requirement applies only to the prosecution. In *Long*, the issue was whether the notice requirement of FRE Rule 404(b) should preclude the introduction of evidence by the prosecution, as opposed to the introduction of evidence by the defendant, as in the instant case. 814 F.Supp. at 73. Thus, *Long*, unlike the instant case, did not address the issue of whether the *defendant's* constitutional rights were violated by a prohibition on the introduction of evidence because the notice rule was violated; and seemingly that question could never be an issue under FRE Rule 404(b) and cases construing that rule.

### C.

#### 1.

The same must be said about the state cases relied on by the ICA. In *Hatcher*, the defense objected to the prosecution's 404(b) notice six days before trial, arguing that "no good cause was shown by the [prosecution] for failing to give earlier notice." 735 N.E.2d at 1158 (internal quotation marks, citation, and brackets omitted). According to the ICA, in its ruling, "the Indiana Supreme Court looked to the circumstances of the case in light of the purpose behind the notice provision" "to determine whether … six days' notice to a criminal defendant" of the names of witnesses who would be called to testify regarding "other crimes, wrongs, or acts" was reasonable. *Pond*, 117 Hawai'i at 348–49, 181 P.3d at 427–28 (citing *Hatcher*, 735 N.E.2d at 1155) (footnote omitted). The Indiana court held that "the defendant was not surprised by the [prosecution's] notice," and at the preliminary hearing, "the [prosecution] provided a summary of each witness' testimony." *Id.* at 349, 181 P.3d at 428 (quoting *Hatcher*, 735 N.E.2d at 1158, 1159) (alteration omitted). Thus, that court concluded the six-day notice was reasonable and that the lower court did not err in admitting evidence. *Hatcher*, 735 N.E.2d at 1159.

In *Scott*, the defendant appealed the admission of "evidence of extraneous offenses" on the ground that the provision of only six-days' notice was unreasonable. 57 S.W.3d at

---

4. HRE Rule 609 does not impose a notice requirement with respect to the offer of evidence.

481 n. 2. The Texas Court of Appeals held that "reasonableness" under Texas Rules of Evidence Rule 404(b) "must be determined by examining the facts and circumstances of each individual case." *Id.* at 480.

In *Scott*, the defense counsel was retained to represent the defendant in connection with three separate sexual assault charges involving different complainants. *Id.* at 481. Ten days before trial, the prosecution decided not to pursue two of those cases. *Id.* Six days before trial, the prosecution notified the defendant that it intended to introduce twenty-two "extraneous offenses," *id.* at 479, eleven of which related to the two dropped charges of sexual assault, *id.* at 481. The prosecution was allowed to introduce some of this evidence during the guilt phase of the trial. *Id.* at 479–80. Before the "punishment phase" of trial, the prosecution again gave the defendant notice of its intent to introduce evidence of the twenty-two extraneous offenses. *Id.* at 480. The evidence was admitted over the defendant's objection for lack of notice. *Id.* On appeal, the defendant argued that the trial court erred in admitting the evidence over his objection. *Id.* at 478.

Analyzing the "facts and circumstances" of that case, the *Scott* court concluded that, because defense counsel was made aware of and investigated the evidence that the prosecution sought to introduce before the guilt phase of trial—but did not object to admission of the evidence at that point, the defendant was not "surprised or disadvantaged because of lack of preparation time." *Id.* at 482–83. Thus, the Texas court concluded that the trial court did not abuse its discretion in "finding that notice was reasonable." *Id.*

**2.**

With all due respect, the ICA inappropriately based its holdings on *Hatcher* and *Scott* for several reasons. First, as discussed *infra*, like the federal rule, the "reasonable notice" requirement in Indiana and Texas applies to the prosecution only. The reasonable notice requirement is triggered when the defendant in a criminal case makes a timely request for such notice to the prosecution. *See Hatcher*, 735 N.E.2d at 1157–58 (quoting Indiana Rules of Evidence R. 404(b)); *Scott*, 57 S.W.3d at 480. Texas Rules of Evidence Rule 404(b) [5] requires reasonable notice by the prosecution in advance of trial. *Scott*, 57 S.W.3d at 480. Indiana Rules of Evidence Rule 404(b) [6] allows the prosecution to provide reasonable notice in advance of or during trial. *Hatcher*, 735 N.E.2d at 1158 (quoting Indiana Rules of Evidence R. 404(b)). By contrast, HRE Rule 404(b) requires the "proponent of evidence" to "provide reasonable notice in advance of trial, or during trial" if the court "excuses pretrial notice for good cause shown" of its intent to introduce "[e]vidence of other crimes, wrongs, or acts[.]" Because the HRE 404(b) notice provision applies to both parties, the reasonable notice language in the Texas and Indiana Rules of Evidence 404(b), like the language of FRE Rule 404(b) construed in *Long*, is not analogous to the reasonable notice language in HRE Rule 404(b).

Second, *no constitutional issues relating to the defendant's due process rights were raised in any of the cases relied on by the ICA, since, obviously, the notice obligation ran only to the prosecution.* Thus, the de-

---

5. Texas Rules of Evidence Rule 404(b) provides in pertinent part that evidence of other crimes, wrongs or acts

 may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that *upon timely request by the accused* in a criminal case, *reasonable notice is given in advance of trial of intent to introduce in the [prosecution's] case-in-chief* such evidence other than that arising in the same transaction. (Emphases added.)

6. Indiana Rules of Evidence Rule 404(b) provides in pertinent part that evidence of other crimes, wrongs, or acts

 may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that *upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial* if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. (Emphasis added.)

fendant's constitutional rights to present a defense and to cross-examine [7] were not implicated in those cases by the exclusion of evidence based on a defendant's failure to provide reasonable notice. Significantly, however, the Indiana Supreme Court in *Hatcher* did, *sua sponte*, caution that forgiving tardy notice by the prosecution might be overborne by the defendant's claim of a violation of due process. It observed that, "[i]f notice of the intent to use 404(b) evidence were so crucial to a fair trial as to implicate due process considerations and constitute fundamental error," a defendant's failure to object to such evidence would not be deemed a waiver. 735 N.E.2d at 1158 n. 1 (internal quotation marks and citation omitted). Unlike in *Hatcher* and *Scott*, in the instant case, Petitioner argued his constitutional right to cross-examine was violated.

Third, in both cases the defense sought to *exclude evidence* the prosecution sought to introduce at trial. Thus, the evidentiary issues in *Hatcher* and *Scott* differ from the instant case. In *Hatcher* and *Scott*, it was the prosecution's unreasonable notice that was in dispute. The evidence sought to be admitted would have enhanced the credibility of the prosecution's 404(b) evidence as the complainants in both cases were not the sole witnesses of the evidence (in *Hatcher*, the victim was deceased).

In this case, Petitioner sought to introduce evidence over Respondent's objections. Petitioner testified that the Complainant had struck him on a prior occasion. However, Respondent objected and the court sustained the objection, ordering that Petitioner's testimony on this issue be stricken and that the jury disregard it. In conjunction with constitutional right claims, Petitioner argued that because the Complainant in this case was the *sole witness* to the prior alleged assault, it was highly relevant to his defense of self-defense. Unlike in *Hatcher* and *Scott*, where additional witnesses were available to address the credibility of the complainant's 404(b) evidence, apparently Petitioner and the Complainant were the only witnesses

germane to Petitioner's defense of self-defense. The evidence was particularly critical to Petitioner's defense because based on Petitioner's representation, he and Complainant were the sole witnesses to the alleged prior attack by Complainant. There was no other means by which Petitioner could adduce evidence of Complainant's alleged attack other than by testifying himself on the matter and by cross-examining Complainant about it. Thus, in striking Petitioner's testimony on the alleged prior attack, the court denied Petitioner his only opportunity to adduce evidence about the attack.

## II.

### A.

Petitioner argues, also, that "the interests forwarded by the notice requirements" of HRE Rule 404(b) do not prevail over "[Petitioner's] constitutional rights" including the "rights to fair trial, to present a defense and [to] cross-examination." Respondent contends that HRE Rule 404(b) may properly serve as a basis for excluding evidence proffered by Petitioner insofar as Petitioner "fail[ed] to give reasonable notice of the 404(b) evidence in advance of trial." The ICA agreed with Respondent that HRE 404(b) is a "valid basis" for excluding evidence, and therefore, "the [court's] decision to preclude the admission of evidence that [Complainant] allegedly struck [Petitioner] on a prior occasion did not constitute an abuse of discretion." *Pond*, 117 Hawai'i at 350, 181 P.3d at 429. The majority maintains that the reasonable notice provision of "HRE Rule 404(b) is not *per se* unconstitutional" and "the [court] did not abuse its discretion by denying [Petitioner's] request to introduce [this evidence]" pursuant to this rule. Majority opinion at 467, 468, 193 P.3d at 383, 384.

However, this does not sanction unconstitutional application of the rule. Neither the court nor the ICA balanced the interests of enforcing the notice requirement of HRE

---

7. Because the court denied Petitioner's request to introduce evidence that Complainant allegedly attacked Petitioner on a prior occasion, on the ground that Petitioner had not given the requisite notice to Respondent under HRE Rule 404(b), Petitioner was effectively precluded from cross-examining Complainant about this alleged prior attack as well, as noted herein.

Rule 404(b) against the interests of protecting Petitioner's constitutional rights to present a defense and to cross-examine the Complainant on matters relevant to his defense. Rather, the ICA focused exclusively on the interests in enforcing the notice requirement of the rule which included "reduc[ing] surprise and promot[ing] early resolution of admissibility questions." *Pond*, 117 Hawai'i at 350, 181 P.3d at 429.

### B.

The court and the ICA did not consider *State v. Peseti*, 101 Hawai'i 172, 65 P.3d 119 (2003), which, as discussed below, requires that a defendant's constitutional rights be weighed against the interests in enforcing evidentiary rules that preclude the admission of certain evidence. In *Peseti*, the defendant sought to "cross-examin[e] the complainant regarding her recantation of her allegations of sexual abuse by [the defendant]." *Id.* at 174, 65 P.3d at 121. The trial court had prohibited the defendant from cross-examining the complainant regarding this matter "on the basis that her recantation fell within either the statutory privilege set forth in [HRE] Rule 505.5(b) (1993) [8] or HRE Rule 504.1(b) (1993)[.]" [9] *Id.* The defendant argued that such prohibition "violat[ed his] constitutional right to confront adverse witnesses as guaranteed by article I, section 14 of the Hawai'i Constitution and sixth amendment to the United States Constitution[.]" *Id.* [10]

This court recognized that "statutory privileges, such as the victim-counselor privilege at issue ... operate to preclude the admission at trial of certain classes of confidential communications." *Id.* at 180, 65 P.3d at 127. This court also noted that "[t]he scope of a statutory privilege, however, is tempered by the principle that 'privileges preventing disclosure of relevant evidence are not favored and may often give way to a strong public interest.'" *Id.* (quoting *State v. L.J.P.*, 270 N.J.Super. 429, 637 A.2d 532, 537 (1994)). Thus, this court held that "when a statutory privilege interferes with a defendant's constitutional right to cross-examine, then, upon a sufficient showing by the defendant, the witness' statutory privilege must, in the interest of the truth-seeking process, bow to the defendant's constitutional rights." *Id.* at 181, 65 P.3d at 128.

Because the right to confrontation guaranteed by article I, section 14 of the Hawai'i Constitution "will not trump a statutory privilege in every case in which a conflict arises between the two[,]" *id.* at 182, 65 P.3d at 129, this court articulated circumstances under which the defendant's constitutional right to confrontation will prevail over a statutory privilege. Those circumstances include "when the defendant demonstrates that: '(1) there is a legitimate need to disclose the protected information; (2) the information is relevant and material to the issue before the court; and (3) the party seeking to pierce the privilege shows by a preponderance of the evidence that no less intrusive source for that

**8.** HRE Rule 505.5(b) governing the victim-counselor privilege provides in relevant part:

(b) General rule of privilege. *A victim has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to a victim counselor* for the purpose of counseling or treatment of the victim for the emotional or psychological effects of sexual assault, domestic violence, or child abuse or neglect, and to refuse to provide evidence that would identify the name, location, or telephone number of a safe house, abuse shelter, or other facility that provided temporary emergency shelter to the victim. (Emphasis added.)

**9.** HRE Rule 504.1(b) governing the psychologist-client privilege provides:

(b) General rule of privilege. *A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential com-*

*munications made for the purpose of counseling or psychotherapy with respect to behavioral problems,* including substance addiction or abuse, among oneself, the client's psychologist, and persons who are participating in the counseling or psychotherapy under the direction of the psychologist, including members of the client's family.
(Emphasis added.)

**10.** Article I, section 14 of the Hawai'i Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against the accused[.]" The sixth amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]"

information exists.' " *Id.* (quoting *L.J.P.*, 637 A.2d at 537).

## C.

### 1.

The instant case is analogous to *Peseti*. Here, Petitioner argues that the court, in prohibiting him from introducing evidence about the Complainant's prior attack on him, "violat[ed] his constitutional rights to present a defense and [to] cross-examin[e]" a witness. Because HRE Rule 404(b), like the privilege provision of HRE Rule 505.5(b), "operate[s] to preclude the admission at trial of certain" information, *id.* at 180, 65 P.3d at 127, enforcement of HRE Rule 404(b) "should [likewise] be tempered by the principle that privileges preventing disclosure of relevant evidence are not favored and may often give way to a strong public interest[,]" *id.* (internal quotation marks and citation omitted). Thus, the rule articulated by this court in *Peseti*, that "when a statutory privilege interferes with a defendant's constitutional right to cross-examine, then, upon a sufficient showing by the defendant, the witness' statutory privilege must, in the interest of the truth-seeking process, bow to the defendant's constitutional rights[,]" *id.* at 181, 65 P.3d at 128, should apply where an evidentiary rule interferes with an accused's constitutional right to put on a defense and to cross-examine.

### 2.

The circumstances identified by this court under which the defendant's constitutional rights will control over a statutory privilege are met here. First, "there [was] a legitimate need to disclose the [prohibited] information[.]" *Id.* at 182, 65 P.3d at 129 (internal quotation marks and citation omitted). As Petitioner argues, evidence of the Complainant's prior attack on Petitioner "was central to his self-defense and without it defense counsel could not adequately defend his client." This is because evidence of a victim's prior violence is relevant to the defendant's argument that the bodily injury inflicted on the victim was a result of the defendant's use of self-defense.

Petitioner had proffered evidence of Complainant's prior attack under HRE Rule 404(b)(2) because the evidence was "relevant to the issue of 'first aggressor' and the reasonableness of [Petitioner's] belief that he was justified in using protective force against her." After the court precluded Petitioner from introducing the evidence under HRE Rule 404(b) due to Petitioner's failure to comply with that subsection's notice requirement, Petitioner requested that the court admit his testimony regarding the prior attack as HRE Rule 404(a) evidence, over Respondent's objection. However, the court sustained the objection, struck the testimony, and instructed the jury to disregard it.

Contrary to the majority's position that the court did not err by precluding this evidence under HRE Rule 404(b), as discussed *infra*, the court's preclusion constituted error. *See* HRE Rule 404(a)(2) (providing that "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused" may be admitted "for the purpose of proving action in conformity therewith on a particular occasion"); *State v. Basque*, 66 Haw. 510, 515, 666 P.2d 599, 603 (1983) (holding that "the court abused its discretion when it flatly prohibited [the defendant] from ... eliciting evidence of[ ] the criminal history of the deceased" where the defendant argued that he acted in "self-defense"); *State v. Lui*, 61 Haw. 328, 329, 603 P.2d 151, 154 (1979) (following the common law rule that "a defendant who claims self-defense to a charge of homicide is permitted to introduce evidence of the deceased's violent or aggressive character either to demonstrate the reasonableness of his apprehension of immediate danger or to show that the decedent was the aggressor"). Here, Petitioner had "a legitimate need to disclose the [prohibited] information," *Peseti*, 101 Hawai'i at 182, 65 P.3d at 129, about Complainant's prior attack because it would "demonstrate the reasonableness of his apprehension of immediate danger or to show that the [Complainant] was the aggressor[,]" *Lui*, 61 Haw. at 329, 603 P.2d at 154.

Second, the evidence proffered by Petitioner was "relevant and material to the issue before the court[.]" *Peseti*, 101 Hawai'i at

182, 65 P.3d at 129. As discussed above, the evidence of the Complainant's prior attack was highly relevant to Petitioner's defense which rested on Complainant being the first aggressor. Petitioner testified that he argued with Complainant about Complainant allowing her dog into the home they shared. Petitioner testified that Complainant "started swearing at [him]" because he disapproved of animals in the home and that Complainant "proceeded to smack [him]." As noted above, the court ordered that this testimony be stricken and that the jury disregard it. However, this evidence of Complainant's alleged prior acts toward Petitioner would be relevant in assisting the jury in its determination of who was the first aggressor.

Third, Petitioner, as "the party seeking to [introduce the evidence,] show[ed] by a preponderance of the evidence that no less intrusive source for that information exists.'" *Id.* Petitioner testified that the alleged prior attack by Complainant occurred when they were at home together. Because there were no other witnesses to that alleged attack and no documentation or other evidence that the attack occurred, the only means by which to introduce evidence of the Complainant's prior attack was by Petitioner's testimony. Thus, the court, in prohibiting Petitioner from providing such evidence, denied Petitioner the only opportunity available to him to introduce the evidence. Accordingly, HRE Rule 404(b) should have given way to Petitioner's constitutional right to present the evidence he proffered in this case.

### D.

The holding in *Peseti* that a defendant's constitutional rights may take precedence over enforcement of evidentiary rules, is supported by other case law. In *State v. French,* 104 Hawai'i 89, 91, 85 P.3d 196, 198 (App.2004), the defendant was convicted of robbery in the second degree and burglary in the first degree. The defendant argued on appeal that "the circuit court erred by [relying on HRS § 806–73 (Supp.2003) [11] in] refusing to conduct an in camera review of the

complaining witness's Adult Probation Division records (APD records) for evidence of untruthfulness and dishonesty." *Id.* at 91, 85 P.3d at 198.

Previous to this case, the ICA itself had held that "the circuit court did abuse its discretion by not conducting an in camera review of the complaining witness's APD records[.]" *Id.* In reaching that holding, the ICA cited *Peseti,* stating that case "specifically held 'that, when a statutory privilege interferes with a defendant's constitutional right to cross-examine, then, upon a sufficient showing by the defendant, the witness' statutory privilege must, in the interest of the truth-seeking process, bow to the defendant's constitutional rights.'" *Id.* at 95, 85 P.3d at 202 (quoting *Peseti,* 101 Hawai'i at 181, 65 P.3d at 128).

In *Chambers v. Mississippi,* 410 U.S. 284, 285–86, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), gunfire was exchanged between police officers and an angry crowd, resulting in the death of an officer. Chambers, a member of the crowd who was also shot, was charged with the murder. *Id.* at 286–87, 93 S.Ct. 1038. However, McDonald signed a sworn statement that he fired the shots that killed the officer. *Id.* at 287, 93 S.Ct. 1038. McDonald was arrested but later repudiated his confession, stating that he confessed because he believed he would not go to jail and hoped to share the proceeds he expected Chambers to receive in a civil suit against the city for being shot. *Id.* at 288, 93 S.Ct. 1038.

The charges against McDonald were dropped and the prosecution proceeded with the murder prosecution against Chambers. *Id.* At trial, Chambers alleged that McDonald had indeed shot the officer. *Id.* at 289, 93 S.Ct. 1038. However, the trial court prevented Chambers from calling McDonald as an adverse witness to confront him about his confession. The trial court stated that McDonald could not be treated as an "adverse witness" because McDonald's statements did not accuse Chambers of any wrongdoing. *Id.* at 291–92, 93 S.Ct. 1038. Furthermore, the trial court prohibited

---

11. HRS § 806–73 governs the duties and powers of probation officers and adult probation records. In general, under that statute, "all records

of the Hawaii state adult probation divisions shall be confidential and shall not be deemed to be public records." HRS § 806–73(b)

Chambers from introducing testimony of witnesses who heard McDonald admit to killing the officer and from introducing McDonald's written confession because the Mississippi rules of evidence at that time allowed an exception to the rule against hearsay only for statements against pecuniary interest but not penal interest. *Id.* at 299, 93 S.Ct. 1038.

In reversing the court, the U.S. Supreme Court recognized that "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Id.* at 294, 93 S.Ct. 1038. The Court further explained that the evidence Chambers sought to admit "was critical to [his] defense" thus, "[i]n these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, *the hearsay rule may not be applied mechanistically to defeat the ends of justice.*" *Id.* at 302, 93 S.Ct. 1038 (emphasis added). *See also Martin v. Commonwealth,* 451 Mass. 113, 884 N.E.2d 442, 447 (2008) (stating that " '[t]he Legislature has accorded a privilege to many types of records that are often sought in protections for sexual assault, but the legislative creation of such privileges cannot trump a defendant's constitutional right to a fair trial' " (quoting *Commonwealth v. Sheehan,* 435 Mass. 183, 755 N.E.2d 1208, 1217 (2001) (Sosman, J., concurring))). In this case, the right to admit the proffered evidence was an essential aspect of Petitioner's right to present a defense and to cross-examine. Accordingly, these rights outweighed the interest in enforcing the notice provision of an evidentiary rule.

Although some cases uphold the exclusion of evidence in the face of a constitutional challenge by the defendant, those cases are distinguishable. In *State v. Calaro,* 107 Hawai'i 452, 461, 114 P.3d 958, 967 (App.2005), the defendant, who was accused of fatally stabbing the victim, sought to introduce evidence of a toxicology report that " 'potentially toxic' level[s] of methamphetamine in the decedent's blood was relevant to the cause of death[.]" The circuit court excluded the evidence on the grounds that any probative value of this evidence was "substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury ... not to mention considerations of undue delay or waste of time." *Id.* at 462, 114 P.3d at 968. The defendant argued that the court's "exclusion was an abuse of discretion and a violation of [his] constitutional rights to confrontation, due process and a jury trial." *Id.* at 461, 114 P.3d at 967. The ICA affirmed the court's ruling that the evidence should be excluded. *Id.* at 462, 114 P.3d at 968.

*Calaro* is distinguishable from the instant case in that the grounds for excluding the evidence was the court's determination that under HRE Rule 403 (1993), the probative value of the evidence was outweighed by the danger of prejudice, confusion of the issues, misleading the jury, and undue delay. In general, such determinations are within the province of the court and should not be disturbed by an appellate court. *See Sato v. Tawata,* 79 Hawai'i 14, 19, 897 P.2d 941, 946 (1995) (explaining that "the determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of discretion because it requires a cost-benefit calculus and a delicate balance between probative value and prejudicial effect" (internal quotation marks and citation omitted)).

In contrast, here, the court apparently did not consider HRE Rule 403 in excluding the evidence proffered by Petitioner. Thus, this case is unlike *Calaro* where the court exercised its discretion on a matter which it is "eminently suited" to determine, namely, the balancing of the probative value of evidence against the dangers that the evidence is prejudicial, confusing, misleading, or a waste of time. Rather, as noted above, the problem with the court's exclusion of Petitioner's evidence lies in the fact that it did not exercise any discretion in balancing Petitioner's constitutional rights against the strict enforcement of the HRE 404(b) notice requirement.

In *State v. Iwatate,* 108 Hawai'i 361, 120 P.3d 260 (App.2005), the ICA held that the State's refusal to disclose the identity of a confidential informant pursuant to HRE Rule

510 (1993),[12] did not infringe on the defendant's constitutional rights where the defendant was accused, *inter alia*, of promoting a dangerous drug in the second degree. The ICA explained that the exception in HRE Rule 510(c)(3) to the privilege guaranteed by HRE Rule 510(a) regarding the identity of informants was not applicable "[b]ecause the circuit court judge did not believe that the police officer's testimony regarding the [informant] was 'inaccurate or untruthful[.]' " *Id.* at 370, 120 P.3d at 269. Hence, "the judge did not err in not requiring disclosure of the [informant's] identity[.]" *Id.*

*Iwatate* is distinguishable from the instant case in that the circuit court, under HRE Rule 510(c)(3), was at liberty there to exercise discretion regarding whether the information "received from an informer [can be] reasonably believed to be reliable or credible." Thus, the ICA deferred to the circuit court's judgment on this issue. As in *Calaro*, the ICA in *Iwatate* did not disturb the determination of the circuit court on matters for which it was authorized to exercise discretion where there was no indication that the circuit courts' determinations were erroneous. Contrastingly, here, the court did not properly exercise discretion in precluding Petitioner's evidence because the court strictly applied the notice requirement of HRE Rule 404(b) without considering other factors such as the harm to Petitioner's constitutional rights.

In sum, consistent with the precedent in our jurisdiction, we must balance the rights to present a fair defense and to cross-examine with "other legitimate interests in the criminal trial process." *State v. Nizam*, 7 Haw.App. 402, 410, 771 P.2d 899, 904–05 (1989) (internal quotation marks and citations omitted). The due process guarantee of a fair trial confers upon the accused in criminal proceedings "a meaningful opportunity to present a *complete defense*." *State v. Matafeo*, 71 Haw. 183, 186, 787 P.2d 671, 672 (1990) (emphasis added) (internal quotation marks and citations omitted). Under the circumstances Petitioner's right to introduce evidence was "arbitrar[ily]" and "disproportionate[ly]" restricted. *Nizam*, 7 Haw.App. at 410, 771 P.2d at 905 (citation omitted).

### E.

The majority argues that "[t]he *Peseti* rule [13] is not outcome dispositive of the instant issue ... because HRE Rule 404(b) serves a different purpose than a statutory privilege and does not *per se* exclude evidence." Majority opinion at 465, 193 P.3d at 381.[14] With all due respect, the majority's argument is incorrect. That the victim-counselor privilege differs from HRE Rule 404(b) because it is for a different purpose and is more stringent in its exclusionary provisions, does not render *Peseti* inapplicable to the instant case.

*Peseti* stands for the proposition that the enforcement of statutes precluding admission of evidence by a defendant requires that the defendant's constitutional rights be weighed

12. HRE Rule 510 provides that "[t]he government ... has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation." HRE Rule 510(a). An exception to this general rule exists under HRE Rule 510(c)(3) whereby the "judge may require the identity of the informer to be disclosed" in certain instances where "the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible[.]"

13. The rule referred to by the majority is the holding in *Peseti* that " 'when a statutory privilege interferes with a defendant's constitutional right to cross-examine, then, upon a sufficient showing by the defendant, the witness' statutory privilege must, in the interest of the truth-seeking process, bow to the defendant's constitutional rights.' " Majority opinion at 466, 193 P.3d at 382 (quoting *Peseti*, 101 Hawai'i at 181–82, 65 P.3d at 128–29).

14. The majority notes that the goal of the victim-counselor statutory privilege in *Peseti* was to "assure[ ] victims that 'their thoughts and feelings will remain confidential' and thereby promotes successful counseling." Majority opinion at 466, 193 P.3d at 382 (quoting *Peseti*, 101 Hawai'i at 180, 65 P.3d at 127). The majority states that, in contrast, the purpose of HRE Rule 404(b) was "designed to reduce surprise during the criminal trial and maintain fairness for both parties." Majority opinion at 466, 193 P.3d at 382. The majority also notes that "[u]nlike a statutory privilege, HRE Rule 404(b) does not automatically render evidence inadmissible." Majority opinion at 466, 193 P.3d at 382.

against the interests in enforcing the statute. That the statute there happened to be a "privilege" statute rather than an evidentiary rule is not a valid basis for distinguishing *Peseti.* The rationale for the *Peseti* rule is sound-rules " 'preventing disclosure of relevant evidence are not favored and may often give way to a strong public interest' " 101 Hawai'i at 180, 65 P.3d at 127 (quoting *L.J.P.,* 637 A.2d at 537), and is equally applicable in the instant case.

An evidentiary "rule may not be applied mechanistically to defeat the ends of justice." *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038. The impairment of a defendant's constitutional rights must be considered and weighed against the imposition of a rule excluding evidence. Failure to do so impermissibly relegates the defendant's constitutional rights to that of rule status. *See State v. Calbero,* 71 Haw. 115, 124, 785 P.2d 157, 161 (1989) (holding that "HRE [Rule] 412 cannot override the constitutional rights of the accused"). *See also Leighty v. State,* 981 So.2d 484, 494 (Fla.App.2008) (noting that "*Chambers* stands for the proposition that constitutional rights and protections trump state court rules of evidence which exclude evidence only when the reliability of that evidence can be tested"); *State v. Richardson,* 670 N.W.2d 267, 280 (Minn.2003) (stating that "[i]f the constitutional right to a fair opportunity to defend against the charge means anything, it must empower a court to override a state evidence rule that would bar the defendant from presenting evidence that could create a reasonable, non-speculative doubt about the defendant's guilt"); *State v. Kornbrekke,* 156 N.H. 821, 943 A.2d 797, 799 (2008) (stating that "[d]ue process and confrontation rights guaranteed by the State and Federal Constitutions may trump established evidentiary rules" (internal quotation marks and citation omitted)). The majority ignores altogether the due process underpinning of the *Peseti* rule.

The majority also argues that the *Peseti* rule is inapplicable in the instant case because "the *Peseti* rule was not designed or intended to address evidentiary notice requirements." Majority opinion at 466, 193 P.3d at 382. This argument is incorrect. Nothing in *Peseti* expressly limits the application of its holdings to cases where evidence is precluded because of statutory privilege requirements, as opposed to cases where evidence is precluded because of evidentiary notice requirements. To read *Peseti* so narrowly would unfairly discriminate among defendants, requiring a balance of the defendants' constitutional rights against enforcement of the preclusionary rule in some cases, and requiring strict enforcement of the preclusionary rule in other cases, depending merely on the type or category to which the preclusionary rule belonged. Such a distinction is without a rational basis and would result in inconsistent outcomes. Not only has the majority failed to identify language in *Peseti* prohibiting its application to the instant case, but the majority has also failed to adhere to the precedent of the *Peseti* rule, casting the law in this area in an unpredictable state.

## III.

The majority also argues that "applying the *Peseti* test to otherwise admissible HRE Rule 404(b) evidence invariably renders the rule's notice requirements unconstitutional" because "it appears that relevant HRE Rule 404(b) evidence would always satisfy the *Peseti* test and therefore, be rendered admissible." Majority opinion at 466, 193 P.3d at 382. The majority's desire to ignore the *Peseti* precedent cannot be justified because the majority may be unhappy with the result this court's own precedent demands. Whether correct or not, the majority's view that HRE Rule 404(b) evidence "would always satisfy the *Peseti* test" is not a basis for rejecting it in any specific case. The evidence proffered by Petitioner in this case involved an alleged prior attack by the Complainant upon Petitioner. Thus, this evidence was highly relevant to Petitioner's defense, which asserted that Complainant was the aggressor with respect to the incident of December 12, 2005, and that Petitioner was acting in self-defense on that night. Moreover, because Petitioner and Complainant were the only witnesses to the alleged prior attack, their testimony constituted the only evidence available on that issue. Based on these particular facts, the evidence proffered

by Petitioner regarding the alleged prior attack satisfied the *Peseti* test. There is no merit to the majority's argument that because the *Peseti* test was satisfied in this particular case, it will be satisfied in nearly every future case. We only decide specific cases; if the majority is dissatisfied with the requirements of *Peseti*, the majority should overrule it, not ignore it.

### A.

The majority cites *Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), for the proposition that a "defendant's right to present relevant evidence 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" Majority opinion at 464, 193 P.3d at 380 (quoting *Lucas*, 500 U.S. at 149, 111 S.Ct. 1743) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). In addition, the majority cites *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), and *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), as examples of other cases "upholding evidentiary notice requirements even where it limited a defendant's right to confrontation." Majority opinion at 464, 193 P.3d at 380 (emphasis omitted). Reliance on these cases is manifestly misplaced.

*Lucas* concerned whether the trial court could preclude evidence proffered by the defendant, who was accused of criminal sexual conduct, regarding his past sexual relations with the victim where the defendant failed to comply with the rape shield statute's evidentiary notice requirements. As posed by the Supreme Court, the issue there was whether the "notice-and-hearing requirement [of the rape shield law] is unconstitutional in *all cases* where it is used to preclude evidence of past sexual conduct between a rape victim and a criminal defendant." 500 U.S. at 148, 111 S.Ct. 1743 (emphasis added). The *Lucas* court expressly limited its opinion, explaining that it "did not address whether the trial court abused its discretion," nor did it address *"whether, on the facts of this case, preclusion violated [the defendant's] rights*

*under the Sixth Amendment."* *Id.* at 153, 111 S.Ct. 1743 (emphasis added). Thus, the *Lucas* holding was that the lower court's *"per se* rule that preclusion is unconstitutional in all cases where the victim had a prior sexual relationship with the defendant" was "error." *Id.*

It is not argued in this dissent that a statute or rule that impinges on a defendant's constitutional right, including the right to confront witnesses and the right to present a defense, is unconstitutional *per se*. The error committed by the court and the ICA did not involve a determination that HRE Rule 404(b) was *per se* unconstitutional. Rather, as discussed *supra*, the error was the failure of the court to balance the interests of enforcing the notice requirements of HRE Rule 404(b) against the interests of protecting Petitioner's constitutional rights. In accordance with *Peseti*, a defendant's constitutional right to confrontation, guaranteed by article I, section 14 of the Hawaiʻi Constitution, may prevail over statutory provisions that preclude the admission of certain evidence, under the three factors discussed previously. *See Peseti*, 101 Hawaiʻi at 182, 65 P.3d at 129.

Indeed, the proposition that a statutory provision precluding the admission of evidence may violate a defendant's constitutional rights, is supported by *Lucas* insofar as *Lucas* remanded the case to the Michigan court to determine "whether, on the facts of this case, preclusion violated [the defendant's] rights under the Sixth Amendment." *Lucas*, 500 U.S. at 153, 111 S.Ct. 1743. Thus, *Lucas* did not hold that the requirements could not be held unconstitutional, as evidenced by its order to the lower court to make this determination on remand.

*Taylor*, like *Lucas*, is inapplicable because it too involved the question of whether a rule precluding the admission of evidence proffered by the defendant was *per se* inappropriate. There, the petitioner, convicted of attempted murder, argued "that the sanction of preclusion of the testimony of a previously undisclosed witness is so drastic that it should *never* be imposed." *Taylor*, 484 U.S. at 413, 108 S.Ct. 646 (emphasis added). The *Taylor* court recognized "the defendant's

right to offer the testimony of witnesses in his favor," but explained that "the mere invocation of that right cannot *automatically and invariably* outweigh countervailing public interests," including the enforcement of the discovery rules that were in question. *Id.* at 414, 108 S.Ct. 646 (emphasis added).

That court held that "[t]he integrity of the adversary process . . . must also weigh in the balance." *Id.* at 414–15, 108 S.Ct. 646. Thus, the *Taylor* court "reject[ed] petitioner's argument that a preclusion sanction is never appropriate no matter how serious the defendant's discovery violation may be." *Id.* at 416, 108 S.Ct. 646. However, the *Taylor* court upheld the evidence preclusion sanction against the petitioner because "it [was] plain that the case fits into the category of *willful misconduct* in which the severest sanction is appropriate." *Id.* at 417, 108 S.Ct. 646 (emphasis added).

This case is distinguishable from *Taylor* as it does not involve an argument that HRE Rule 404(b) is *per se* inappropriate or unconstitutional. This case is also distinguishable in that there was no finding by the court and no argument made by the parties that the delayed notice regarding the HRE Rule 404(b) evidence was attributable to "willful misconduct." Moreover, *Taylor* supports this dissent's position that in deciding whether to enforce a rule that precludes evidence, the court must "balance" the defendant's rights against the interests in enforcing the rule. *Id.* at 414–15, 108 S.Ct. 646.

*Nobles* is also not analagous to the instant case. There, the defendant was convicted of bank robbery. The U.S. Supreme Court upheld the trial court's refusal to allow the defense investigator to testify about his interviews with prosecution witnesses inasmuch as the defense stated that "it did not intend to produce the [investigator's] report" for examination by the prosecution. 422 U.S. at 227–29, 95 S.Ct. 2160. The defendant in *Nobles,* in contrast to Petitioner in the instant case, could have called the investigator as a witness but chose not to because he did not want to produce the report. As *Nobles* noted, the defendant was at liberty to make "an informed choice to call for the investigator's testimony and thereby open his report

to examination," *id.* at 241, 95 S.Ct. 2160, but instead chose not to do so.

*Nobles* observed that the trial court "did not bar the investigator's testimony" but instead, "merely prevented [the defendant] from presenting to the jury a partial view of the credibility issue by adducing the investigator's testimony and thereafter refusing to disclose the contemporaneous report that might offer further critical insights." *Id.* This situation is entirely different from the instant case where Petitioner was not presented with a choice to introduce the evidence, but was instead summarily denied that right despite the explanation he offered for the delayed notice.

*Wardius* is likewise inapplicable. The question before the court was whether an Oregon statute precluding the introduction of alibi evidence where notice of the alibi defense was not given prior to trial violated a defendant's due process rights because it did not provide for reciprocal discovery. 412 U.S. at 471–72, 93 S.Ct. 2208. *Wardius* held that "the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants" and since the "Oregon statute did not provide for reciprocal discovery, it was error for the court below to enforce it against petitioner[.]" *Id.* at 472, 93 S.Ct. 2208.

*Wardius* is manifestly inappropriate inasmuch as the "reciprocal discovery" provision of a statute is not at issue. Moreover, this dissent does not take issue with the statement in *Wardius,* quoted by the majority, that " 'the growth of [ ] discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system[.]' " Majority opinion at 464, 193 P.3d at 380 (quoting *Wardius,* 412 U.S. at 474, 93 S.Ct. 2208). *See State v. Dowsett,* 10 Haw. App. 491, 498, 878 P.2d 739, 743 (1994) (holding that " '[t]he ends of justice will best be served by a system of liberal discovery,' " maximizing the information available to both parties, and that " 'discovery devices[,] . . . by increasing the evidence available to both parties, enhances the fairness of the adversary system' " (quoting *Wardius,* 412 U.S. at

473–74, 93 S.Ct. 2208) (internal quotation marks and citation omitted)), *overruled on other grounds by State v. Rogan,* 91 Hawai'i 405, 423 n. 10, 984 P.2d 1231 n. 10 (1999).

### B.

The majority also cites *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), *Baxter v. State,* 522 N.E.2d 362, 369 (Ind.1988), and *Lambert v. Holbert,* 172 S.W.3d 894 (Mo.App. S.D.2005), in support of the proposition that the notice requirements of a rule like HRE Rule 404(b) advance the interests of "protect[ing] parties and the jury trial system from falling prey to opposing counsel's trial tactics and strategies that do not promote a fair trial." Majority opinion at 467, 193 P.3d at 383. It is not doubted that HRE Rule 404(b) advances these legitimate interests. It is the blind enforcement of the rule, without any regard to the impact on the defendant's constitutional rights to whether any prejudice has been suffered by the opposing party, and to whether prejudice, if any, can be rectified by a means other than the total preclusion of evidence, that this dissent considers erroneous.

### IV.

Second, in my view the court should have conducted an inquiry into whether a continuance was required in this case in light of Petitioner's right to present a complete defense and to cross-examine. Even though

not expressly raised in the certiorari application, a trial court should consider whether a continuance would cure a discovery-like violation.[15] Prior to the start of trial, Petitioner asked for a continuance in order to satisfy the HRE 404(b) notice requirement. Petitioner argued that "the record shows there was no prejudice to [Respondent]" and "the court could have commenced with *voir dire,* while allowing [Respondent] time to investigate prior to ruling on the admissibility of the 404(b) evidence." *See Dowsett,* 10 Haw. App. at 495, 878 P.2d at 742 (holding that a court "must consider whether less severe measures would rectify prejudice caused to [a] defendant" by a prosecutor's violation of a rule of penal procedure prior to dismissing the case). The court denied the request because of its desire to proceed with jury selection, which had been scheduled for that morning.[16] Regarding this issue, the ICA ruled that "[the court's] refusal to continue the trial to allow [Petitioner] to provide HRE Rule 404(b) notice in advance of a rescheduled trial was not an abuse of discretion." *Pond,* 117 Hawai'i at 350, 181 P.3d at 429.

However, neither the court nor the ICA conducted the requisite inquiry into the relative equities related to a decision regarding a requested continuance, *i.e.,* Petitioner's constitutional rights to present a defense and to cross-examine and prejudice to Respondent. "An abuse of discretion occurs when the court clearly exceeds the bounds of reason or

15. This issue was not expressly raised in the Amended Application for Writ of Certiorari (Application). However, Petitioner did include it in his "Points of Error" raised with the ICA. ("The court erred when it ... denied [d]efense counsel's motion to continue trial and allow him time to file written notice under HRE [Rule] 404(b).") Nevertheless, because, as discussed *infra,* I believe that in denying the continuance the court abused its discretion and substantially prejudiced Petitioner's constitutional right to put forth a defense, *see State v. Vliet,* 91 Hawai'i 288, 294 n. 3, 983 P.2d 189, 195 n. 3 (1999) ("The sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution guarantee an accused ... the right to present a defense[.]" (Citing *Nizam,* 7 Haw.App. at 411, 771 P.2d at 905)), this issue may be resolved under the doctrine of plain error, *see State v. McCrory,* 104 Hawai'i 203, 206, 87 P.3d 275, 278 (2004) (explaining that, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b),

"[a]n appellate court may recognize plain error when the error committed affects substantial rights of the defendant" (internal quotation marks and citations omitted)); *State v. Nichols,* 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) (holding that "this [c]ourt will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights" (citations omitted)).

16. Defense counsel maintained that he was unable to communicate with Petitioner until the day of trial to obtain the date of the prior assault. In addition, defense counsel stated that he was "stuck in court all day in trials" on the Friday before and did not receive notice until that Friday that Petitioner's trial had been moved ahead in the court's schedule and would therefore begin sooner than anticipated.

disregards rules or principles of law to the substantial detriment of a party litigant." *State v. Fetelee,* 117 Hawai'i 53, 63, 175 P.3d 709, 719 (2008) (quoting *State v. Torres,* 85 Hawai'i 417, 421, 945 P.2d 849, 853 (App. 1997)).

### A.

In *Dowsett,* prior to trial and pursuant to HRPP Rule 16,[17] the trial court had ordered the prosecution to produce any statements made by the complaining witness. 10 Haw. App. at 494, 878 P.2d at 741. No documents relating to statements made against the defendant by any witnesses, including the complainant, were provided to defense counsel before trial. However, during trial, a police officer handed the defendant a document signed by the complaining witness describing the suspect and vehicle. This statement production took place *after* four witnesses had testified at trial. *Id.* Upon review of the document, the trial court apparently ascertained that the description therein was inconsistent with the complaining witness' testimony, ruling that "from this form alone, it can be seen that the complaining witness' testimony would have been impeached." *Id.*

The prosecutor admitted knowing about the document " 'approximately two weeks before trial' but stated he 'forgot about it.' " *Id.* The defendant maintained that the prosecutor's failure to disclose the document was "extremely prejudicial" and requested a mistrial. *Id.* The trial court granted the defendant's motion, dismissing the case with prejudice, on the ground that the document "was a 'substantial part of [d]efendant's defense and was necessary for [d]efendant for his use in cross examination of the complaining witness.' " *Id.*

On appeal, the ICA in *Dowsett* noted that although the trial court has broad discretion in considering a motion to dismiss, "before the court orders dismissal of a case because of the [prosecutor's] violation of HRPP Rule 16, [18] it must consider whether less severe measures would rectify prejudice caused to the defendant by the violation." *Id.* at 495, 878 P.2d at 742. In accordance with HRPP Rule 16, the ICA observed that "the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial[.]" *Id.* at 498, 878 P.2d at 743 (quoting *Wardius,* 412 U.S. at 473–74, 93 S.Ct. 2208) (brackets omitted).

Despite the fact that the existence of the relevant document in the *Dowsett* case was revealed after the trial had begun and the complaining witness had already testified, the ICA noted that the prosecution had not yet closed its case when the document came to light. *Id.* at 495, 878 P.2d at 742. The ICA concluded that "[a] short continuance to allow [the d]efendant to examine the form and to prepare cross-examination would have cured whatever prejudice resulted because of the document's late production" by the prosecution. *Id.* at 495–96, 878 P.2d at 742. According to the ICA, because *"[t]he trial court ... failed to 'take into account ... the feasibility of rectifying that prejudice by a continuance [,]' ... the court abused its discretion in failing to grant a continuance to allow the prejudice to be rectified." Id.* (quoting *State v. Marzo,* 64 Haw. 395, 397, 641 P.2d 1338, 1340 (1982)) (emphasis added), *overruled on other grounds by State v. Wells,* 78 Hawai'i 373, 894 P.2d 70 (1995). Thus,

---

17. HRPP Rule 16 (1991), the version in effect when the trial court in *Dowsett* issued its discovery order, required that "the prosecutor shall disclose" certain "material and information within the prosecutor's possession or control[,]" including, pertinently, "any books, papers, documents, photographs, or tangible objects ... which are material to the preparation of the defense and are specifically designated in writing by defense counsel." HRPP Rule 16(b)(1)(iv).

18. HRPP Rule 16, entitled "Discovery," reads, in pertinent part:

**(e) Regulation of discovery.**

. . . .

(9) Sanctions.

(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may order such party to permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances.

although from the facts neither party in *Dowsett* requested a continuance, the ICA identified it as an option that judges must consider to rectify any potential prejudice caused by late notice of evidence not timely produced.

### B.

In *State v. Estrada*, 69 Haw. 204, 210, 738 P.2d 812, 818 (1987), the prosecutor failed to produce evidence regarding a report prepared by a Victim—Witness Counselor in the prosecutor's office regarding allegations of physical abuse by the complainant against his former girlfriend (the Ogawa Report). Previously, the prosecutor had provided the defendant with a police report in which a former girlfriend raised allegations of physical abuse that occurred several times while she was dating the complainant. *Id.* Although not explicitly stated, it appears that the defendant intended to call the former girlfriend as a witness to lend credence to his contention that the complainant was the initial aggressor, and that the defendant was justified in using force to defend himself. *Id.*

On the third day of trial, during an *in limine* hearing to determine the relevance of the former girlfriend's testimony, the girlfriend revealed the existence of another abuse complaint against the complainant that was documented in the Ogawa Report. *Id.* Had the witness not mentioned the Ogawa Report, the defendant would not have known of its existence. It was also found that the report was prepared in September 1985, about two months after the discovery request. *Id.*

The defendant asked for a continuance to review the Ogawa Report and investigate the former girlfriend's allegations, which she had subsequently recanted. *Id.* The trial court denied the request, ruled both reports inadmissible, and precluded the former girlfriend from testifying, concluding that "[her] charges had been exaggerated, were not relevant, or alternatively, even if they were relevant, their probative value would be substantially outweighed by the dangers of un-fair prejudice, confusion of the issues, or waste of time." *Id.*

On appeal, this court held that although the trial court had discretion to deny the continuance, it abused its discretion. *Id.* at 214–15, 738 P.2d at 820–21. It was explained that the complainant's "prior bad acts[,] which indicate a propensity for violence, aggression, or abuse of police powers, . . . were highly relevant to [the] self-defense claims." *Id.* at 215, 738 P.2d at 821 (citation omitted). Ultimately, this court concluded that because defense counsel "had little opportunity to investigate the [reports] to prepare the defense" and the trial judge "*made no inquiry regarding the reasons for [the prosecution's] failure to comply with HRPP Rule 16(b) or whether any prejudice resulted from [the prosecution's] misconduct,*" the judge "should have allowed the trial continuance as an appropriate remedy to cure the harm created by [the prosecution's] unexplained delays in providing discovery of essential information." *Id.* at 216, 738 P.2d at 821 (emphasis added).

### V.

Analogous to the present case, *Dowsett* and *Estrada* involved the impact of new evidence on a defendant's ability to fairly and adequately present a defense. First, the discovery rule involved in *Dowsett* and *Estrada*, HRPP 16(b), and the notice requirement of HRE Rule 404(b) implicated in this case, are alike. In *Dowsett*, the ICA explained that strict adherence to the discovery rules was essential to the truth-finding function of trials and a necessary component of judicial efficiency. 10 Haw.App. at 497–98, 878 P.2d at 743. Similarly, when the notice requirement was added to FRE Rule 404(b), which HRE Rule 404(b) "closely resembles," *see* Commentary on HRE Rule 404, the 1991 Advisory Committee Note explained that it "[was] intended to reduce surprise[.]" Fed. R. Evidence, Advisory Committee Notes, 1991 Amendment. Thus, like discovery rules, the notice requirement in HRE Rule 404 was intended to ensure that both parties will have access to pertinent evidence, better enabling the preparation of their respective

cases.[19]

## VI.

However, the violation of the discovery rule in *Dowsett* and *Estrada* was not enough to preclude admission of the evidence at trial.[20] In the instant case, new evidence was disclosed and a continuance requested *before jury selection*, unlike in *Estrada* and *Dowsett* where new evidence was presented *during trial* and a continuance was denied, but subsequently allowed by the appellate court on the ground that a continuance should have been granted. In the instant case the court felt a continuance was unnecessary; however, in stating it did not need a continuance because there were "more than sixty jurors outside" and that the evidence should have been produced before trial[,] it failed to adequately consider the impact on Petitioner's self-defense argument and whether any substantial prejudice would redound to Respondent. A short continuance could have allowed Respondent to verify the alleged prior assault from its own witness, while, as Petitioner stated, "the court could have commenced with *voir dire.*"

Respondent argued Petitioner failed to "give reasonable notice of the HRE Rule 404(b) evidence in advance of trial[,]" and he "failed to show good cause to excuse pretrial notice." According to Respondent, "[the court] did not find an adequate showing to excuse pretrial notice," given that Petitioner "could have gave [sic] notice of at least a[n] estimated time period, the location, and general nature of the evidence" he sought to

admit even though he could not remember the exact date of the prior attack.

But in *Estrada,* this court held that a continuance was "an appropriate remedy to cure the harm created by [the prosecution's] *unexplained delays* in providing discovery of essential information." 69 Haw. at 216, 738 P.2d at 821 (citation omitted) (emphasis added). In this instance, the prior assault evidence was revealed to Respondent and the court *before jury selection, i.e.,* "in advance of trial," within the literal language of HRE Rule 404(b). As Petitioner argued, a continuance would have provided time for him to "file written notice for the 404(b) evidence in order to comply with the notice requirement[,]" thus eliminating any possibility of prejudice to Respondent if such evidence was a "surprise."

## VII.

Assuming, *arguendo,* that the notice was not "reasonable notice in advance of trial[,]" the court made no finding regarding whether, in light of Petitioner's constitutional claim and the lack of any expression of prejudice by Respondent, a continuance was appropriate or not. Respondent restated the court's rationale in denying the continuance on grounds that "if the evidence went to the heart of [Petitioner]'s defense, the evidence should have been given more prominence." On the other hand, Petitioner asserted that "the [HRE Rule] 404(b) evidence was central to [his] self-defense defense and without it counsel could not adequately defend [Petitioner.]"

---

19. Similarly, the majority's argument that the explanation offered by Petitioner for failure to provide advance notice of the Complainant's alleged prior attack was "disingenuous at best[,]" and that Petitioner's explanation that he wasn't able to pinpoint the day of the alleged prior attack until the morning of the trial, did not constitute "good cause for delaying the notification," majority opinion at 468, 193 P.3d at 384, only pertains to the failure to give notice without any consideration of balancing the constitutional interests embodied in a fair trial.

20. In this case, Petitioner requested a continuance to allow time to file the HRE Rule 404(b) notice *before* trial. Petitioner maintains that (a) "there was no evidence that defense counsel in-

tentionally delayed until the morning of trial to give HRE 404(b) notice to [Respondent] or did so to gain unfair advantage," and (b) prior notice of intent to introduce the 404(b) evidence was not given because "[Petitioner] did not remember the date [of Complainant's prior attack] until the morning of trial." The ICA affirmed the court's ruling, holding that the court "did not abuse its discretion when it precluded the admission of HRE 404(b) evidence and denied [Petitioner's] motion to continue trial." *Pond,* 117 Hawai'i at 346, 181 P.3d at 425. The ICA agreed with the court that Petitioner's "oral notice of intent" to submit the prior bad act evidence—the alleged prior assault-did not constitute "reasonable notice." *Id.* (quoting HRE Rule 404(b)).

Similar to the defendant's argument raised in *Estrada* concerning the relevance of precluded evidence to prove the "original aggressor," Petitioner contended that "the evidence that [Complainant] had physically attacked [Petitioner] two weeks prior to the alleged offense was highly relevant to the issue of 'first aggressor.'" Given the importance of this evidence to Petitioner's defense, the court should have considered whether "less severe measures" such as a continuance was an appropriate remedy for a tardy notice. *Dowsett*, 10 Haw.App. at 495, 878 P.2d at 742.

## VIII.

Indeed, the court *did not at all* consider the impact that excluding the evidence would have on Petitioner's constitutional rights, and weigh that right against any prejudice shown by Respondent because of a continuance. The court made no inquiry as to the feasibility of investigating the alleged prior assault. There was no evidence that witnesses other than the Complainant would be a witness, or that other witnesses would be necessary, and, if so, that the delay would prevent Respondent from being able to prosecute. Correlatively, Respondent did not make any showing that it had been prejudiced by the failure to disclose the incident earlier.

In light of the holdings in *Dowsett* and *Estrada*, the court should have at the least conducted an inquiry into the feasibility of a short continuance to cure any perceived prejudice suffered by Respondent in order to preserve the integrity of the criminal proceedings. The court was required to "consider whether less severe measures would rectify [any] prejudice," *Dowsett*, 10 Haw. App. at 495, 878 P.2d at 742, caused to Respondent by Petitioner's violation of an evidentiary rule rather than to deny Petitioner the right to present the proffered evidence altogether.

As noted in *Estrada*, the court "made no inquiry regarding ... whether any prejudice resulted from [Petitioner's] misconudct." 69 Haw. at 216, 738 P.2d at 821. The court's denial of Petitioner's right to present the proffered evidence was a substantial detriment to Petitioner's defense because the evidence bore directly on the issue of whether the Complainant was the first aggressor and therefore whether Petitioner was acting in self-defense. The majority does not address the requirement under *Dowsett* that "less severe measures would rectify prejudice" caused to a party before precluding the evidence entirely. 10 Haw.App. at 495, 878 P.2d at 742. In this case, the "less severe measure" would have been to grant a continuance of the trial. The majority also does not address the requirement under *Estrada* that the court was required to make an "inquiry regarding the reasons" for failure to comply with the rule in question and "whether any prejudice resulted" from the failure to comply. 69 Haw. at 216, 738 P.2d at 821. Based on the foregoing, I would hold that the failure to conduct such an inquiry was an abuse of discretion.

## IX.

Third, I would vacate the court's and the ICA's judgments and remand the case because the self-defense instruction given was incorrect. Petitioner argues that the ICA erred in affirming the court's instruction to the jury on self-defense. The court issued the following jury instruction on self-defense:

The use of force upon or towards another person is justified *when a person reasonably believes that such force is immediately necessary to protect himself on the present occasion* against the use of unlawful force by the other person. *A person employing protective force may estimate the necessity thereof under the circumstances as he reasonably believes them to be when the force is used without retreating.* If, and only if, you find that the defendant was reckless in having a belief that he was justified in using self-protective force against another person, or that the defendant was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justifiability of his use of force against the other person, then the use of such protective force is unavailable as a defense to the offense of abuse of family or household member.

(Emphases added.) This instruction was affirmed by the ICA which stated that "[t]he foregoing instruction is consistent with the language of [HRS § 703–304 (1993) ]" [21] and "adequately prohibits the jury from assessing those circumstances unknown to the defendant at the time." *Pond,* 117 Hawai'i at 351, 181 P.3d at 430. In his writ, Petitioner argues that the self-defense instructions were erroneous because they failed to "define for the jury that the reasonableness of [Petitioner's] belief must be viewed from his perspective." Petitioner's position is supported by this court's prior decisions.[22]

In *Estrada,* this court held that the following instructions on self-defense were proper:

### INSTRUCTION NO. 19

### (STATE'S INSTRUCTION NO. 8)

A person is justified in using force upon or toward another when the person using the force reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

. . . .

### INSTRUCTION NO. 23

### (DEFENDANT'S INSTRUCTION NO. 4)

The reasonableness of the Defendant's belief shall be determined from the point of view of a reasonable person *in the Defendant's position* under the circumstances as he believed them to be.

---

**21.** HRS § 703–304 reads in relevant part:
**Use of force in self-protection.** (1) ... [T]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.
. . . .
(3) ... [A] person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used without retreating, surrendering possession, doing any other act which he has no legal duty to do, or abstaining from any lawful action.

69 Haw. at 224–25, 738 P.2d at 826 (emphasis added).

In *State v. Pemberton,* 71 Haw. 466, 477, 796 P.2d 80, 85 (1990), this court held that the following instruction misstated the law on self-defense and therefore vacated the defendant's conviction:

The reasonableness of the Defendant's belief shall be determined from the viewpoint of a reasonable person *in the Defendant's position* under the circumstances shown in the evidence.

(Emphasis added.)

The *Pemberton* court held that the standard for evaluating a claim of self-defense requires the jury to "consider the circumstances as the Defendant *subjectively* believed them to be at the time he tried to defend himself." *Id.* (emphasis added). This court explained that "[t]he instruction given in this case allowed the jury to consider all the circumstances shown by the evidence, regardless of whether or not Defendant was aware of them" and the instructions given above were therefore "misleading and erroneous." *Id.* Hence, this court agreed with the defendant's argument there that in requiring the jury to "consider all the circumstances shown by the evidence, regardless of whether or not Defendant was aware of them[,]" the instruction "allowed the jury to disregard Defendant's perception of the alleged incident" and "*direct[ed] them to apply an objective standard instead.*" *Id.* (emphasis added).

The Hawai'i Committee on Pattern Jury Instructions–Criminal (HAWJIC) relied on this court's express statements in *Estrada*

(Boldfaced font in original.)

---

**22.** Here, Petitioner did not object at trial to the instruction. This court has recognized that "the duty to properly instruct the jury lies with the trial court[.]" *Nichols,* 111 Hawai'i at 335, 141 P.3d at 982. "As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error." *Id.* at 334, 141 P.3d at 981 (internal quotation marks and citation omitted). Plain error occurs where "the substantial rights of the defendant have been affected adversely[.]" *Id.* (internal quotation marks and citation omitted).

and *Pemberton.* The HAWJIC commentary reiterates that a "defendant's belief for the need to use deadly force is 'determined from the point of view of a reasonable person *in the [d]efendant's position* under the circumstances as the defendant believed them to be.'" Commentary to HAWJIC 7.01 (quoting *Estrada,* 69 Haw. at 225, 738 P.2d at 826) (emphasis added).[23] Thus, "an instruction focusing the jury on the 'defendant's position under the circumstances shown in the evidence' was misleading and erroneous," *id.* (quoting *Pemberton,* 71 Haw. at 477–78, 796 P.2d at 85), in that it failed to communicate to the jury that "the jury must consider the circumstances as the defendant *subjectively* believed them to be" at the time of the incident in question, *id.* (emphasis added). The HAWJIC Commentary also notes that "[t]he facts of consequence to the determination of self-defense all concern the actor's state of mind: (1) whether the actor reasonably believed that deadly force was necessary, and (2) whether the actor reasonably believed that he or she was threatened with one of the specified harms." *Id.* (internal citation omitted). Thus, the Commentary notes that this court in *State v. Lubong,* 77 Hawai'i 429, 886 P.2d 766 (App.1994), held that "a defendant's self-protection defense requires a subjective determination of whether the defendant had the requisite belief that deadly force was necessary" to avoid harm. Commentary to HAWJIC 7.01 (citing *Lubong* ).

23. It should be noted that "while the HAWJIC 'have been approved for publication, the Hawai'i Supreme Court has not approved the substance of any of the pattern instructions' ... and the courts are not bound by them." *State v. Gomes,* 117 Hawai'i 218, 226 n. 14, 177 P.3d 928, 936 n. 14 (2008) (quoting *Calaro,* 107 Hawai'i at 463, 114 P.3d at 969 (quoting *State v. Nupeiset,* 90 Hawai'i 175, 181 n. 9, 977 P.2d 183, 189 n. 9 (App.1999))). However, this HAWJIC instruction has been approved by this court as discussed *supra. See State v. Augustin,* 101 Hawai'i 127, 63 P.3d 1097 (2002); *Pemberton,* 71 Haw. at 477, 796 P.2d at 85; and *Estrada,* 69 Haw. at 225, 738 P.2d at 826.

24. As noted in the *Augustin* dissent, in my view the petitioner's application for certiorari in that case "should have been granted primarily to clarify the state of our case law with regard to the use of force defense to protect oneself or others" that was raised by the petitioner. *Augus-*

In *Augustin,* a majority of this court dismissed a certiorari proceeding brought by a petitioner who argued that the self-defense instruction given during his trial for murder was erroneous. The majority sanctioned the HAWJIC pattern instruction. The instruction read as follows:

> The use of deadly force upon or toward another person is justified when a defendant using such force reasonably believes that deadly force is immediately necessary to protect himself on the present occasion against death or serious bodily injury. The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person *in the defendant's position* under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be.

101 Hawai'i at 130, 63 P.3d at 1100 (emphasis added). The majority in *Augustin* approved the foregoing instruction that mandated that the jury evaluate the reasonableness of the defendant's use of self-defense "from the viewpoint of a reasonable person in the defendant's position[.]" *Id.* The majority held that such instructions were proper "because the instructions in question—derived from [HAWJIC] 7.01 ('Self–Defense') and 7.02 ('Defense of Others')—are fully consonant with the controlling statutory and case law of this state." *Id.* at 127, 63 P.3d at 1097.[24]

*tin,* 101 Hawai'i at 129, 63 P.3d at 1099 (Acoba, J. dissenting, joined by Ramil, J.). It was stated that a three-part test should serve as the standard for evaluating the use of self-defense by a defendant.

> First, under the subjective portion of the test, it must be asked whether a defendant's belief that self-defense was necessary under the circumstances as he or she believed them to be, is actual and real.... Second, assuming it was, the fact finder must consider whether the prosecution has proved that the defendant's view of the circumstances was unreasonable. [Third, i]f the prosecution fails to do so, then the fact finder must decide whether the prosecution has established that a reasonable person under those circumstances would believe the force used was necessary.

*Id.* at 135, 63 P.3d at 1105. It was explained that the instruction's statement that the jury "should view 'the circumstances [as] the defendant was aware [of them]' fail[ed] to inform [the

The commentary to the self-defense statute, HRS § 703–304, states that "Hawai'i case law require[s] that the defendant's belief [regarding the necessity of using force in self-defense must] be reasonable." Commentary to HRS § 703–304. The commentary cites the case of *State v. Clyde*, 47 Haw. 345, 388 P.2d 846 (1964), to illustrate this point. The defendant there, accused of murder in the first degree for shooting the victim with a shotgun, argued that he fired in self-defense. The self-defense instruction read in pertinent part:

> The law of self-defense is founded on the principle of necessity, either actual or apparent, and in order to justify the taking of human life on this ground the slayer, as a reasonable man, must have reason to believe and must believe that he is in danger of receiving great bodily harm; and further, the circumstances must be *such that an ordinarily reasonable person, if he were in those circumstances and if he knew and saw what such person in real or apparent danger knows and sees, would believe that it was necessary* for him to use, in his defense and to avoid great bodily injury to himself, such force or means as might cause the death of his adversary.

*Id.* at 354–55, 388 P.2d at 851 (emphasis added). This court held that the instruction was proper. The *Clyde* instructions clearly indicated that the jury was to consider the use of force from one in the defendant's position because the jury was required to consider what a reasonable person would do "if he were in those circumstances" faced by the defendant and "if he knew and saw" what the defendant "knows and sees[.]" *Id.*

In light of the foregoing cases, and as the HAWJIC Advisory Committee indicated, a proper jury instruction on self-defense contains both a subjective prong *and* an objective prong. Under the objective prong, emphasis is placed on the reasonable person standard so the defendant's use of force must be "determined from the point of view of a reasonable person[.]" *Estrada*, 69 Haw. at 225, 738 P.2d at 826. *See also Pemberton*, 71 Haw. at 477, 796 P.2d at 85 (explaining that "the standard for judging the reasonableness of a defendant's belief for the need to use deadly force is determined from the point of view of a reasonable person in the [d]efendant's position"); *State v. Faafiti*, 54 Haw. 637, 645, 513 P.2d 697, 703 (1973) (holding that the degree of force to which a person is lawfully entitled to use is "limited by what a reasonable person in the same situation ... would believe to be necessary"); *Nupeiset*, 90 Hawai'i at 186, 977 P.2d at 194 (holding that the self-defense instruction was proper because it "required that the jury evaluate the [d]efendant's belief that the use of force was necessary from the viewpoint of a reasonable person").

Under the subjective prong the jury is required to evaluate the use of force from the defendant's perspective. Under the subjective prong, the focus is on the circumstances known to the defendant, thus directing the jury to consider the actions of a "reasonable person *in the [d]efendant's position* under the circumstances as he believed them to be." *Estrada*, 69 Haw. at 224–25, 738 P.2d at 826 (emphasis added). *See also Pemberton*, 71 Haw. at 477, 796 P.2d at 85 (holding that the jury "must *consider the circumstances as the defendant subjectively believed them to be* at the time he tried to defend himself" (emphasis added)); *Faafiti*, 54 Haw. at 645, 513 P.2d at 703 (affirming the jury instruction that required the jury to evaluate the defendant's

jury] that the defendant's subjective understanding of the situation must be evaluated from a reasonable person's perspective." *Id.* at 136, 63 P.3d at 1106.

Thus, the "jury [was] seemingly foreclosed from considering whether the defendant's interpretation of the circumstances was reasonable." *Id.* at 134, 63 P.3d at 1104. Nonetheless, as stated there, I "would affirm the ICA's decision" allowing the instruction because despite the error, it "benefitted Petitioner" by "allow[ing] the jury to accept Petitioner's point of view without assessing the reasonableness of it...." *Id.* at 137, 63 P.3d at 1107 (citing *Nupeiset*, 90 Hawai'i at 185, 977 P.2d at 193 ("The Hawaii Supreme Court has held a defendant cannot complain of an erroneous instruction which benefitted him [(or her)]." (Brackets, internal quotation marks, and citation omitted.))).

Although this was a published order dismissing certiorari, unpublished orders rejecting applications for certiorari and dissents thereto may be found in the LexisNexis database at http://www.lexis.com.

use of force "seeing what [the defendant] sees and knowing what [the defendant] knows"); *Nupeiset*, 90 Hawai'i at 186, 977 P.2d at 194 (affirming the jury instruction that required jurors to consider "the circumstances of which the defendant was aware or as [the] defendant believed them to be").

In the instant case, Petitioner is correct that the instruction was erroneous because the necessary reference to the subjective prong of the self-defense test was lacking. The statement in the instructions that the use of force may be "estimated . . . under the circumstances as [the defendant] *reasonably* believes them to be" (emphasis added) is not equivalent to an instruction that the use of force must be evaluated from a person in defendant's position. The statement, "under the circumstances as he reasonably believes them to be," omits the requirement that the viewpoint be that of a person who is "in the defendant's position" which would satisfy the requirement that the defendant's subjective belief is accounted for. Similar to *Pemberton*, the reference to "reasonable belief" results in an incomplete instruction[25] because a juror may interpret the term as an instruction to view the situation as a hypothetical reasonable person would or as the juror himself would, but may fail to consider the situation from Petitioner's position. That unaccounted-for perspective would entail consideration of factors such as Petitioner's interaction with the Complainant and the facts known to Petitioner.

There was insufficient guidance to the jury here to evaluate the use of force from Petitioner's point of view because the instruction lacked express language pertaining to Petitioner's position. The question of whether the defendant's subjective view of the circumstances was reasonable is a separate question. This distinction was recognized in

*Estrada*, in *Pemberton*, in HAWJIC, and in *Augustin*.

By approving the language used in the self-defense instruction in the instant case as a substitute for the language sanctioned in the foregoing cases, the majority has reduced the self-defense instruction to one of an objective standard only. In doing so, "the substantial rights of the defendant have been affected adversely," *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981, because it is not clear that the jury would evaluate the use of self-defense considering a person in Petitioner's position as our case law requires. In my opinion, the giving of the self-defense instruction in this case thus constituted prejudicial error.[26]

Concurring and Dissenting Opinion by
DUFFY, J.

I concur with the majority opinion with one exception: I believe the Intermediate Court of Appeals (ICA) erred in its finding that the circuit court's jury instruction on self-defense was proper. *State v. Pond*, 117 Hawai'i 336, 351, 181 P.3d 415, 430 (App. 2007). In my view, the jury instruction given was improper and prejudicial for the reasons stated by Justice Acoba in his Concurring and Dissenting Opinion, whose analysis I agree with on this point.

---

25. The standard of review for jury instructions is "whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." *State v. Crail*, 97 Hawai'i 170, 180, 35 P.3d 197, 207 (2001) (internal quotation marks and citation omitted). *See State v. Pinero*, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) (stating that "[e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively

appears from the record as a whole that the error was not prejudicial" (internal quotation marks and citation omitted)).

26. However, because this case has been remanded, and with all due respect, the court is at liberty to give the HAWJIC instruction although its giving was not reversed.